**In re Randolph KERR a/k/a Randy Kerr, Debtor.**

**Edward F. BUNCH, James Burge, Gilbert G. Caver, David F. Gruenewald, Robert H. McKinney and Larry E. Motley, Plaintiffs,**

v.

**Randy KERR, Defendant.**

**Bankruptcy No. LR 84–967M. Adv. No. 84–492M.**

United States Bankruptcy Court, E.D. Arkansas, W.D.

Aug. 6, 1985.

John Tisdale, Little Rock, Ark., for debtor.

Steve Napper, Little Rock, Ark., for plaintiffs.

Ralph M. Sloan, Jr., Little Rock, Ark., trustee.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

Randolph Kerr (debtor) filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code on July 27, 1984. The plaintiffs filed an objection to discharge pursuant to 11 U.S.C. § 727 and a complaint to determine dischargeability pursuant to 11 U.S.C. § 523. In the complaint, the plaintiffs alleged that the debtor should be denied discharge for the following reasons. First, the plaintiffs' objection alleged that the debt owing to plaintiffs was "incurred through fraud and defalca-tion while acting in a fiduciary capacity." Second, plaintiffs alleged that the debtor falsely asserted that the plaintiffs' liability as investors in an apartment development project would be limited to their investment, and that the debtor intentionally misrepresented and omitted material relating to the formation of the project. Third, plaintiffs alleged that the debtor engaged in "improper unauthorized self-dealing with partnership funds and assets." The debtor filed a motion to dismiss plaintiffs' objection to discharge under Section 727, and a hearing was held on the motion to dismiss on February 20, 1985. The debtor was represented by Hon. John Tisdale, and the plaintiffs were represented by Hon. Steve Napper.

In his motion to dismiss, the debtor contended that the plaintiffs failed to plead fraud with the necessary particularity required by Fed.R.Civ.P. 9(a) and Bankruptcy Rule of Procedure 7009. Counsel for plaintiffs asserted that their complaint alleging "improper and unauthorized self-dealing with partnership funds and assets" in fact meant that the debtor stole money. Plaintiffs also contend that allegations that the debtor falsely asserted that the investors' liability would be limited to their investment was a material misstatement which is the equivalent of pleading securities fraud under Section 523.

The plaintiffs urged the Court to find that the debtor had actual knowledge of the facts constituting the objection despite the alleged deficient pleadings. Plaintiffs contend that all of their allegations are based on testimony given at a deposition of debtor taken two years prior to the hearing. Counsel for plaintiffs stated that he had discussed the objections with debtor's attorney the day prior to this hearing. However, this is not a permissible substitute for the requirements of Bankruptcy Rule of Procedure 7009. *See In re Martin*, 30 B.R. 22 (Bkrtcy.E.D.Va.1983).

Fed.R.Civ.P. 9(b) made applicable to bankruptcy matters through Bankruptcy Rule of Procedure 7009 requires that cir-

cumstances constituting fraud be stated with particularity. *In re O.P.M. Leasing Services, Inc.*, 21 B.R. 993 (Bkrtcy.S.D.N.Y.1982). The pleading must present a factual basis to support the allegations of fraud. *Matter of Metro Equipment & Rental Corp.*, 28 B.R. 579 (Bkrtcy.N.D.Ohio 1983). The purpose of the rule is to require the plaintiff to set forth facts sufficient to inform the debtor of the charges against him. *In re Tanner's Transfer & Storage of Virginia*, 30 B.R. 22 (Bkrtcy.E.D.Va., Alexandria D.1983). This procedure is especially crucial in objections to discharge because of the Bankruptcy Code's general policy of granting a debtor a discharge forthwith. *In re Konchan*, 36 B.R. 393, 396 (Bkrtcy.N.D.Ill.1984); Bankruptcy Rule of Procedure 4004.

■ The plaintiffs cited two grounds for objection to the debtor's discharge: (1) fraud and defalcation of debtor; and (2) improper and unauthorized self-dealing by the debtor with partnership assets. However, the complaint does not allege sufficient facts to establish the various elements of a fraud action. The complaint alleges only conclusions. The debtor's motion to dismiss is sustained as to these allegations. *In re Whitfield*, 41 B.R. 734 (Bkrtcy.W.D.Ark., El Dorado D.1984); *In re Klein*, 31 B.R. 947 (Bkrtcy.E.D.N.Y. 1983); *Matter of Fodiman*, 18 B.R. 965 (Bkrtcy.S.D.N.Y.1982).

■ Plaintiff's third ground, however, false assertions made by the debtor, is sufficient to place the debtor on notice of the conduct in question. The complaint specifically recites ·that debtor falsely asserted that the investors' liability would be limited to their investment. As to this objection, the motion to dismiss is denied.

A hearing on the merits was held on the plaintiffs' only remaining allegation to determine dischargeability on February 22, 1985. The precise issue before the Court was whether the debtor perpetrated a fraud by falsely asserting that the investors' liability would be limited to their investment, thereby rendering plaintiffs' claim nondischargeable under 11 U.S.C. § 523(a)(2)(A). The plaintiffs' claim for damages is based on an alleged securities fraud.

The Court heard testimony from three of the plaintiffs, Gruenewald, Burge and McKinney. Each of these plaintiffs was an investor in an apartment/condominium project known as North Oaks Townhouses which was an investment package arranged by the debtor, Randolph Kerr. Each of the investors similarly testified that their involvement in the North Oaks Townhouses project was as passive investors who made no business decisions about the construction of the projects. The investors each made an initial investment and additional investments in varying amounts for loan commitments, architectural fees, and annual payments on the real estate. The initial investments ranged from a 2½% to a 20% investment.

The investors each testified that the debtor approached them in August, 1981, with loan documents from Worthen Bank & Trust Company, N.A. (Worthen), including a promissory note for $2,000,000.00 for their individual signature and a mortgage on the real estate to secure the note. Included in documents was a partnership agreement of North Oak Townhouses which states that these investors, along with other investors, were forming a general partnership under the name of North Oaks Townhouses. The promissory note, mortgage and partnership agreement of North Oaks Townhouses were each signed by these investors. There was nothing about the note that would suggest, even to an unsophisticated businessman, that it would be anything other than what it appeared to be, which was a personal obligation of the maker of the note. The investors testified that they signed the documents with little or no review of them, but rather relied on Mr. Kerr's representations that the investors' liability would be limited to their partnership investment share. The investors understood that their liabilities and profits were directly related to their investment percentage in the project although the promissory note spe-

cifically states in the first sentence that the partners "jointly and severally promise to pay to the order of Worthen Bank & Trust Company, N.A. ... the principal sum of TWO MILLION DOLLARS ($2,000,000.00), with interest on unpaid principal ...." The investors further testified that they would not have signed the partnership agreement, nor the loan documents had they understood that their liability was not limited to their investment in the project.

The debtor testified that he had been a real estate agent for several years and since 1972 he was a real estate broker. The debtor had put together approximately ten real estate deals over the last ten years. Some of the plaintiffs in this action were investors in prior projects of the debtor. The North Oaks Townhouses project was the only general partnership project in which the debtor had ever been involved. The debtor further testified that it was possible that prior to 1980, he could have represented to the investors that they would have some type of limited liability in the North Oaks Townhouses project. If the investors became dissatisfied with the project, the debtor told them that he would buy them out at any time for their investment in the project, plus 10% profit. The debtor unequivocally testified that after 1980 he had never represented to the individual investors that they would have limited liability. In fact, the debtor testified that Worthen had refused to loan money to the investors as a limited partnership and refused to make individual loans in the amount necessary to fund the project. Mr. Kerr stated that he had informed the investors that Worthen had refused a limited partnership format when making the loan.

The debtor understood that the investors had relied on his advice and guidance in the project. Some of the investors had even executed a power of attorney in favor of the debtor. There was also testimony that the debtor never prohibited the investors from seeking legal advice although he did try to expedite the signing of the loan documents and partnership agreement because he was "trying to get on with the project."

Messrs. Gruenewald, Burge and McKinney were very well educated individuals. Mr. Gruenewald held an electrical engineering degree and had completed one year of graduate work in that area. Mr. Burge held a B.A. in mathematics and physics, and Mr. McKinney held an electrical engineering degree. Each of these investors had varying experience in other real estate transactions, although each testified that they did not understand the legal ramifications of a general partnership. The investors testified that they became aware of their personal liability as general partners when Worthen contacted them in early 1982 after the project was in trouble.

At the close of the testimony, the debtor moved for a directed verdict against the investors, Bunch, Caver and Motley. The Court granted the directed verdict since no testimony had been presented to support the allegations made by these investors against the debtor.

■ For the Court to find a debt nondischargeable under Section 523(a)(2)(A) the objecting creditor must prove that a debt "for money, property, services ..." was obtained and (1) that the debtor knowingly made a false representation; (2) that the debtor made the representation with the intent to defraud; and (3) that the creditor relied upon the false representation to his detriment. *In re Schmidt*, 36 B.R. 459, 460 (E.D.Mo.1983); *Matter of Borah*, 36 B.R. 535, 536 (Bkrtcy.M.D.Fla., Tampa D.1983); *In re Sutton*, 39 B.R. 390, 396 (Bkrtcy.M.D.Tenn.1984). The creditor must prove the alleged fraudulent activity of the debtor by clear and convincing evidence before the debt is determined nondischargeable. *In re Konchan*, 36 B.R. at 396.

■ Each of the investors testified that they had varying prior real estate experience and were familiar with "spread sheets" and "renderings" prepared in connection with the project. It is difficult to conceive that someone who is familiar with these real estate terms and who has the education and obvious intelligence each of these men possess would sign a $2,000,-

000.00 note, a real estate mortgage and a general partnership agreement without knowing generally the legal consequence of their actions. Yet that is the testimony of each of the plaintiffs who all present a demeanor consistent with truthfulness. This testimony is in direct conflict with the debtor's testimony that in connection with the execution of the documents in question, he made no representation regarding limited liability. The debtor's demeanor was also consistent with truthfulness and is corroborated by the unambiguous language of the documents themselves. It would have been unreasonable for the plaintiffs to believe that debtor's oral representation would prevail over unambiguous contradictory written provisions in a promissory note. With the evidence so evenly balanced, the requirement that plaintiff prove the allegation of fraud by clear and convincing evidence becomes determinative and requires that the impasse in the testimony must be resolved in favor of the debtor. *In re Konchan,* 36 B.R. at 393.

Based upon the evidence, the Court overrules the plaintiffs' objection to the dischargeability of plaintiffs' debt.

IT IS SO ORDERED.