In re Judy Carol KISSINGER.

CITIZENS STATE BANK, BALD KNOB, ARKANSAS, Plaintiff,

v.

Judy Carol KISSINGER, Defendant.

Bankruptcy No. LR 88–2248 S.
Adv. No. 89–38.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Oct. 4, 1989.

Brian Wolfman, Little Rock, Ark., for debtor.

Donald Raney, Searcy, Ark., for Citizens State Bank, Bald Knob, Ark.

### ORDER

MARY D. SCOTT, Bankruptcy Judge.

Pending before the Court is a Motion to Alter or Amend Judgment. In support of this Motion the Defendant asserts the following:

1. In an Order entered on July 7, 1989, this Court found defendant's debt to plaintiff non-dischargeable. The Court held that the defendant obtained the loan from the plaintiff jointly with her ex-husband under a proper power of attorney from her ex-husband.

2. The Court held, however, that the defendant knew that she and her ex-husband did not own all of the nineteen head of cattle pledged as collateral on the loan and, therefore, held the loan non-dischargeable, pursuant to 11 U.S.C. § 523(a)(2)(A).

3. Defendant moves this Court to alter or amend the judgment and hold the loan dischargeable because she believes that the proof at trial does not show by clear and convincing evidence that the plaintiff pledged nineteen head of cattle under false pretenses.

The Defendant also submitted a "Memorandum of Law" in support of her Motion. Defendant does not cite any rule of procedure which supports her Motion, but the Court assumes she intends either Rule 52 or 59 of the F.R.C.P. Sometimes these Motions are made together. The Plaintiff has filed a response asserting that the Defendant, pursuant to Rule 59 of the F.R.C.P., does not present any new evidence or arguments which were not or could not have been presented at trial in the matter. The Plaintiff is also contending that the Defendant is requesting that the Court "simply change its mind." Although the Defendant does not cite any particular procedural rule in support of her Motion, the Court, as earlier noted, believes that she is, pursuant to Rule 52 of the F.R.C.P., questioning the sufficiency of the evidence to support the findings made by the Court and seeks amended findings as well as an amended judgment in accord with those findings. Rules 52 and 59 of the F.R.C.P. are applicable to bankruptcy adversary proceedings. See Rules 7052 and 9023 of the Rules of Bankruptcy Procedure.

For the Court to find a debt nondischargeable under Section 523(a)(2)(A) the objecting creditor must prove by clear and convincing evidence that a debt for money, property, or services was obtained and (1) that the debtor knowingly made a false representation; (2) that the debtor made the representation with the intent to defraud; and (3) that the creditor relied upon the false representation to its detriment. See, *In Re Kerr*, 58 B.R. 171, 174 (Bkrtcy. E.D.Ark.1985). See, also, *In Re Ophaug*, 827 F.2d 340 (8th Cir.1987) and *Matter of Van Horne*, 823 F.2d 1285 (8th Cir.1987), wherein the court held:

> Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred. See *In Re Simpson*, 29 B.R. 202, 211 (Bkrtcy.N.D.Iowa 1983). Accord *In Re Frye*, 48 B.R. 422, 427 (Bkrtcy.M.D.Ala. 1985); *In Re Brown*, 55 B.R. 999, 1004

(Bkrtcy.E.D.N.Y.1986). When the creditor introduces circumstantial evidence proving the debtor's intent to deceive, the debtor "cannot overcome [that] inference with an unsupported assertion of honest intent." *In Re Simpson*, 29 B.R. at 211–12. The focus is, then, on whether the debtor's actions "appear so inconsistent with [his] self serving statement of intent that the proof leads the court to disbelieve the debtor." *In Re Hunt*, 30 B.R. 425, 441 (M.D.Tenn.1983).

■ The Court has reviewed its previous Order as well as its oral ruling from the bench and agrees with Plaintiff that Defendant is essentially asking the Court to change its mind because of conflicting testimony. It is true that testimony was conflicting which then required the trier of fact to make a credibility determination. Defendant overlooks the credibility finding made by the Court that the debtor did not present a demeanor consistent with truthfulness.

The parties do not disagree that the bank loaned money to the debtor or that nineteen head of cattle were pledged as collateral to secure the loan. There also appears to be no dispute that the nineteen head of cattle did not provide sufficient collateral to obtain the loan and, hence, some additional real estate was pledged. It is also undisputed that the bank is still owed money and cannot locate the cattle so that they can be sold to satisfy all or part of the debt. There is still an outstanding debt owed.

The Court found that the debtor knowingly made a false representation to the bank that she and her ex-husband had nineteen head of cattle to pledge. The debtor, by her own admission, handled all the family financial business, but did not really know nor could she establish with any certainty that she and her ex-husband owned the nineteen head of cattle pledged to the bank. She testified that she saw her ex-husband pay cash for the cows, but was uncertain as to any amounts. She "disputed" claims by her ex-father-in-law that he or anyone else owned any of the cows. She had no proof to offer other than her own self-serving assertion. Wendell Nier, a bank officer, dealt directly and only with the debtor during the transaction and viewed the cattle with her. The debtor's ex-father-in-law testified. Although his testimony was confusing, he did credibly testify that he and his wife, as well as a stepson, Calvin Miller, claimed an ownership interest in the cows. The debtor admitted that her ex-father-in-law attended sales and assisted in hauling and caring for the cows, but just simply "disputed" his and his stepson's claims to ownership. She could not establish ownership of the cows beyond stating that her ex-husband purchased them for cash and believed the cash to be theirs because he took the money out of his wallet to pay for the cattle. She testified that this money was cash left over after she cashed his paycheck and gave him the funds. Further, although the debtor testified that her ex-husband got the nineteen head of cattle in their divorce action, she conceded they were not mentioned in the parties' divorce decree.

There was also considerable testimony surrounding the use of a power of attorney by the debtor to secure the loan proceeds from the bank. The debtor admits the document was her idea and claims her ex-husband signed it. He denies ever signing the power of attorney. The debtor admits the document, although notarized, was, in fact, not signed in front of a notary public. Finally, the debtor also admits she took over payment of the bank's debt after the divorce, but could no longer make payments because she decided to go back to school.

What is clear is that the parties are unfriendly to the point of being openly hostile, each disputing what the other states. Caught in the middle is the bank which accepted a power of attorney, apparently notarized improperly by a local attorney, viewed collateral (the cattle) which the debtor purported to own and upon these representations and the additional pledge of real estate (which the debtor received under the divorce decree) agreed to loan funds to the debtor and her ex-husband.

The Court simply did not believe the debtor's self-serving statements regarding the ownership of the cattle. Thus, the Court, after considering all the circumstances, found that the debtor intended to deceive the bank. The debtor did not produce any evidence to support her bare assertions that she thought she owned all the cattle she pledged. The Court found her testimony incredible particularly in light of her claim that she took care of all the household financial and business dealings.

Under the circumstances, the debtor's request that this Court amend its earlier findings and judgment is denied.

IT IS SO ORDERED.