**In re James S. SMITH.**

**WORTHEN BANK & TRUST CO., N.A., Plaintiff,**

**v.**

**James S. SMITH, Defendant.**

**Bankruptcy No. 89–41997 S. Adv. No. 90–4038.**

United States Bankruptcy Court, E.D. Arkansas, Little Rock Division.

Oct. 5, 1990.

Ken Cook, Little Rock, Ark., for Worthen Bank & Trust.

Basil Hicks, No. Little Rock, Ark., for debtor.

Randy Rice, Little Rock, Ark., Trustee.

## MEMORANDUM OPINION

MARY D. SCOTT, Bankruptcy Judge.

Now before the Court is an adversary proceeding, wherein the Plaintiff, Worthen Bank & Trust Company ("Worthen"), challenged the dischargeability of the debt owed to it by debtor, James S. Smith ("Smith"). The matter came before this Court for hearing on September 13, 1990. Worthen appeared by counsel, Ken Cook, Esq. Debtor appeared in person and by counsel, Basil Hicks, Esq.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a) and § 157(a). Moreover, the Court finds that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1) as exemplified in 28 U.S.C. § 157(b)(2)(I). Accordingly, this Court may enter final orders and judgments in this matter. 28 U.S.C. § 157(b)(1).

## FACTS

Beginning in the early 1980's the debtor managed an advertising firm until a state court receiver was appointed. Throughout the firm's existence, it underwent three name changes as various partners entered and left the firm. Smith's business operated under the names of "Smith, Jennings & Kane," "Smith & Jennings, Inc.," and in 1984 the firm assumed its final name, "J. Sam Smith & Associates, Inc." Smith testified that each name change was publicly announced, and that he directed his legal counsel to file the necessary papers with the Arkansas Secretary of State's office to effectuate the corporation's name change. Moreover, Smith testified that he believed that J. Sam Smith & Associates, Inc. ("JSS, Inc.") was properly incorporated under Arkansas corporation law. He further testified that he did not realize that that had not been accomplished until 1988, at which time he corrected the oversight. On October 5, 1989, as a result of personal and financial problems after his business was placed in the hands of a receiver, Smith filed an individual voluntary Chapter 7 petition.

Worthen, in support of its nondischargeability claim, maintains that Smith obtained money for his business and pledged certain of the business assets as security under the false pretense that JSS, Inc. was a valid corporation. This money has not been repaid because the business ultimately failed. When that happened Worthen discovered that its lien on the business accounts receivable was not first in time. Presumably, although the evidence was unclear, Worthen is alleging that it found itself in this unfavorable lien position (i.e. unsecured) because Smith gave the bank false information regarding the name of the business and it was unable to properly perfect its security interest. Worthen does not address the fact that it failed to record a central filing in the Secretary of State's office and its lien would not have been properly perfected in any event.

Nevertheless, and essentially overlooking this last fact, Worthen contends that Smith should not be able to discharge his guarantor obligation because he gave the bank false information when he obtained loan proceeds for his business. The issue then before the Court is whether Smith did perpetrate a fraud upon Worthen such that the debt based upon his guarantee would be excepted from discharge pursuant to sections 523(a)(2)(A) and/or (B) of the Bankruptcy Code.

Smith testified that his company's banking relationship with Worthen commenced in the early 1980's, and described this relationship with Worthen as an "open" one. Smith further stated that Worthen was aware of the various business name changes over the years, as well as his personal involvement in the financial transactions between these firms and the bank. On March 30, 1985, Worthen loaned JSS, Inc. $48,000.00. In conjunction with the note, the parties executed a security agreement which gave Worthen a security interest in the accounts receivable of JSS, Inc. On September 26, 1985, Worthen and JSS, Inc. executed a note renewing the March 1985 loan. This note was again extended on March 25, 1986. Subsequently, the parties executed a second renewal of the original note on September 22, 1986. On February 22, 1988, a final extension agreement of the note was signed. This final extension provided that all unpaid principal and accrued interest was due and payable June 22, 1988. As noted, Smith personally guaranteed the business loans to Worthen, and it is upon this guarantee and Smith's representations on behalf of his business that Worthen's claim is based.

Pursuant to these loan agreements, JSS, Inc. provided Worthen with monthly statements that disclosed the financial condition of a business named JSS, Inc. Smith maintains that throughout their business relationship, he was consistently candid with Worthen and at no time undertook to mislead or to deceive any loan officer with whom he was transacting business. Smith introduced into evidence the following documents in support of this claim, as well as his claim that the failure to complete a formal name change with the Secretary of State's office was an innocent oversight:

(1) a check inscribed with "Smith & Jennings, Inc." which Worthen accepted as payment on the "JSS, Inc." note;

(2) a second check inscribed with "JSS, Inc.," with the same account number as number (1) *supra*, which Worthen also accepted as payment without objection;

(3) a 1984 personal property tax bill for Smith & Jennings, Inc., and a 1985 personal property tax bill for JSS, Inc.;

(4) a JSS, Inc., March 13, 1986 application for extension of time to file income tax return and a 1983 Smith & Jennings, Inc. tax return with the same federal identification number;

(5) a January 22, 1986 Dunn & Bradstreet financial report in the name of Smith & Associates, and JSS, Inc.; and

(6) an Annual State Corporation Franchise Tax Report of April 30, 1985, addressed to JSS, Inc.

William C. Neal, vice-president of Worthen, was the only witness testifying for Worthen. On cross examination he stated that he was not the loan officer who negotiated or monitored the original loan to JSS, Inc., and that he did not handle any of the extensions or renewals. Neal did state, however, that he was familiar with the bank's standard procedures regarding background investigations of potential loan customers. Neal further testified that it is the bank's usual practice to check with the Secretary of State's office regarding the legal status of a corporation before loaning such an entity money. Neal admitted that, according to the files, Worthen apparently undertook no such investigation regarding JSS, Inc. either before making the original $48,000.00 loan in 1985, or before executing the subsequent renewals and extensions.

## DISCUSSION

Chapter 7 of the Bankruptcy Code provides that the court "shall grant [. . .] a discharge" to an individual debtor if the provisions of the section are met. 11 U.S.C. § 727(a)(1) *et seq.* However, certain debts may be determined to be nondischargeable if money, property and services were obtained by "false pretenses, false representations or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2). Furthermore, the Code excepts from discharge any debt obtained by the use of a materially false statement in writing, concerning the debtor's or an insider's financial condition, upon which the

creditor reasonably relied, and which the debtor made available with intent to deceive. 11 U.S.C. § 523(a)(2)(B).

## A. SECTION 523(a)(2)(A) EXCEPTION TO DISCHARGE

In order for the Court to find that a debt is nondischargeable under section 523(a)(2)(A) of the Code, the objecting creditor must prove by clear and convincing evidence that a debt for money, property, or services was obtained, and (1) that the debtor knowingly made a false representation; (2) that the debtor made the representation with the intent to defraud; and (3) that the creditor relied upon the false representation to its detriment. *In re Kissinger*, 106 B.R. 180, 181 (Bkrtcy.E.D.Ark. 1989); *see Matter of Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987); *In re Kerr*, 58 B.R. 171, 174 (Bkrtcy.E.D.Ark.1985). In establishing the element of the debtor's intent, the creditor is usually limited to presenting evidence of the surrounding circumstances from which the debtor's intent may be inferred. This is so because direct proof of the debtor's state of mind is often impossible to obtain. *Van Horne*, 823 F.2d at 1287; *Accord In re Brown*, 55 B.R. 999, 1004 (Bkrtcy.E.D.N.Y.1986); *In re Frye*, 48 B.R. 422, 427 (Bkrtcy.M.D.Ala.1985).

■ Once the creditor submits proof on each element of its claim by clear and convincing evidence, the Court must balance the debtor's actions against his defense which more often than not is only a self serving declaration of innocent intent. Thus, the Court is often called upon to make a credibility finding, and then balance the debtor's truthful or untruthful demeanor against his actions in the circumstances surrounding the financial transaction(s) at issue. *See Van Horne*, 823 F.2d at 1288; *In re Hunt*, 30 B.R. 425, 441 (M.D.Tenn. 1983).

■ In the present case, Smith contends he did not knowingly make a false statement to Worthen or intend to defraud the bank. He thought JSS, Inc. was a corporation. In support of this contention he stated that he made two different payments on the Worthen note with checks imprinted first with "Smith & Jennings, Inc." and then with "J. Sam Smith & Associates, Inc.". Both were accepted by Worthen as payments on the company's debt without objection. Further, in 1985 Smith paid Arkansas personal property tax assessed against JSS, Inc. Also in 1985, Smith applied for an extension of time to file the corporation income tax return for JSS, Inc., which had the same tax identification number as Smith & Jennings, Inc.'s 1983 federal corporate tax return. Smith also presented evidence that his company paid its 1985 state corporation franchise tax under the name of JSS, Inc.

These facts demonstrate to the Court circumstances and behavior that are contradictory to those of an unscrupulous debtor, who intends to beguile a creditor with false information regarding the true nature of his business. A debtor with such intent would not likely jeopardize his facade by making payments to the creditor on checks bearing different corporate names. The Court further finds that this evidence lends support to Smith's contention that until late 1987 or early 1988 he believed JSS, Inc. to be a properly registered Arkansas corporation. The Court concludes that such a belief was reasonable under the circumstances.

Smith's testimony, the documentary evidence regarding the business affairs of the company, as well as Smith's lengthy relationship with Worthen, all lead the Court to conclude that Smith did not have the requisite intent necessary for the Court to find that he knowingly made false representations and/or intended to deceive Worthen.

For the foregoing reasons, the Court finds that Smith did not knowingly make a false representation to Worthen and did not have the requisite intent to defraud Worthen necessary to cause the debt at issue to be deemed nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code.

## B. SECTION 523(a)(2)(B) EXCEPTION TO DISCHARGE

■ In order for the Court to find that a debt is nondischargeable under section

523(a)(2)(B) of the Code, the creditor must sustain its burden of proof by clear and convincing evidence. *See In re Tilbury*, 74 B.R. 73, 77 (9th Cir.BAP 1987); *Knoxville Teachers Credit Union v. Parkey*, 790 F.2d 490, 491 (6th Cir.1986). The creditor must show that the debtor obtained money, property, credit or services: (1) by the use of a materially false statement; (2) in writing; (3) respecting the debtor's financial condition; (4) made with the intent to deceive; and (5) that the creditor reasonably relied upon the information in the writing to advance the money, property, credit or services to the debtor. *In re Lesher*, 80 B.R. 121, 123 (Bkrtcy.E.D.Ark.1987).

■ Worthen's only evidence on the issue was that Smith, on behalf of his company, JSS, Inc., submitted financial statements to the bank. Smith testified that JSS, Inc. furnished these reports to Worthen as part of their ongoing, open business relationship. Worthen did not allege that the financial information contained in the reports was materially false. Rather, its only contention was that the reports were materially false because they were submitted by JSS, Inc., a company which was never properly registered as an Arkansas corporation in the Secretary of State's office.

This contention alone, even with the debtor's concession that the facts occurred as Worthen asserts, is not a sufficient showing to render a debt nondischargeable under this subsection. Worthen failed to establish that it reasonably relied on the false assertion made in the financial reports, or that the debtor gave the bank the statement with intent to deceive. As noted earlier, Worthen vice-president, William C. Neal, testified that the bank's records indicate that the bank never followed standard banking practices by inquiring of the Secretary of State's office to ascertain whether JSS, Inc. ever properly registered as a corporation. Further, the bank never properly perfected its security interest in JSS, Inc.'s accounts receivable with a central filing in the Secretary of State's office.

## CONCLUSION

In view of the foregoing, the Court concludes that Smith did not knowingly intend to give false information to or intend to defraud Worthen, and his debt to the bank, by virtue of his personal guarantee, should be discharged in this Chapter 7 proceeding.

Accordingly, it is hereby

ORDERED that Worthen's Complaint to declare the debt owed to it by the debtor nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (B) is denied, and the debt is discharged.

IT IS SO ORDERED.