In re Karen Olson **EDWARDS**, Debtor.

**CITIBANK, N.A.**, Plaintiff,

v.

**Karen Olson EDWARDS**, Defendant.

**FIRST BANKCARD CENTER**, Plaintiff,

v.

**Karen Olson EDWARDS**, Defendant.

**NORWEST CARD SERVICES, INC.**, Plaintiff,

v.

**Karen Olson EDWARDS**, Defendant.

**Bankruptcy No. 91–31389–BKC–RAM. Adv. Nos. 91–0815–BKC–RAM–A to 91–0817–BKC–RAM–A.**

United States Bankruptcy Court, S.D. Florida.

Dec. 4, 1991.

Richard Freeman, Ft. Lauderdale, Fla., for debtor.

Darrell Payne, Miami, Fla., for plaintiffs.

## MEMORANDUM OPINION

MARY D. SCOTT, Visiting Judge.

The cause before the Court includes three adversary proceedings consolidated for trial in which Plaintiffs, Citibank, N.A. ("Citibank"), First Bankcard Center ("FBC"), and Norwest Card Services, Inc. ("Norwest"), seek, pursuant to 11 U.S.C. § 523(a)(2)(A) and (C), to determine the dischargeability of credit card debt. Trial was held November 20, 1991. The debtor appeared personally and by counsel, Richard Freeman, Esq. The three Plaintiffs appeared by counsel, Darrell Payne, Esq.

This Court has subject matter jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 1334(a) and 157(a). Moreover, the Court finds that these are "core proceedings" within the meaning of 28 U.S.C. § 157(b)(1) as exemplified in section 157(b)(2)(I). Accordingly, this Court may enter a final judgment in the matter.

Plaintiffs assert debtor, Karen Olson Edwards, obtained credit and cash advances by false pretenses. The Court concludes for the following reasons that the debts owed to the three Plaintiffs should not be discharged.

11 U.S.C. § 523(a)(2)(A) provides in pertinent part:

(a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud ...

In addition, subsection (C) under this section of the Bankruptcy Code adds a presumption of nondischargeability as to consumer debts aggregating more than $500 for "luxury goods and services" incurred within forty (40) days before the order for relief or for cash advances aggregating more than $1000 obtained within twenty (20) days before the order for relief. 11 U.S.C. § 523(a)(2)(C).

Testimony revealed the following facts. The debtor filed her Chapter 7 bankruptcy petition May 17, 1991. She has been employed in various part-time occupations which netted her less than $10,000 per year in income. Her income for each of the two years preceding this bankruptcy case was less than $10,000. She apparently hoped various job prospects would eventually elevate her income to approximately $65,000, but those prospects were never realized. During the same three to four year time period the debtor obtained 16–17 different credit cards.[1] Seven (7) of those credit cards are at issue in these adversary pro-

---

1. Debtor's Chapter 7 schedules were not made a part of the adversary proceeding records so the exact number of cards and debt incurred is unknown.

ceedings. Debtor charged various amounts for goods and services, but, in the main, drew cash advances. Creditors seek a determination that $30,743.65 is nondischargeable.

The seven (7) credit cards issued by the three creditors are as follows:

| | Creditor | Type | Account # |
|---|---|---|---|
| # 1 | FBC | Mastercard | 5411 1709 4658 7998 |
| # 2 | FBC | Visa | 4418 0237 2150 3654 |
| # 3 | Norwest | Visa | 4205 0061 0491 5568 |
| # 4 | Citibank | Visa | 4128 733 658 079 |
| # 5 | Norwest | Mastercard | 5317 0014 9150 0190 |
| # 6 | Citibank | Visa | 4128 343 026 824 |
| # 7 | Citibank | Preferred Visa | 4271 3824 0050 8996 |

Records for these accounts reveal the following relevant information. The Court will refer to various cards as # 1 through # 7 as designated above.

*Card # 1:* FBC statements date from 8–3–90 through 6–3–91 when the account was closed. Activity in the account reveals cash advances of $1,000 on 9–19–90 and $1,000 on 1–24–91. From 8–3–90 through the end of the year the account history reveals the debtor had a credit limit of $3,000. She charged various small amounts in October, 1990 totalling only $282. In September she made two payments of $15 each, in October a $15 payment, in December two payments of $40 and $38 and a final $10 payment in February, 1991. The only other activity in this account occurred when she made significant cash withdrawals. The first occurred on 10–3–90 in the amount of $1,000, and a second $1,000 was withdrawn on 1–24–91. In that same month her credit limit was increased to $4,000. The March, 1991 statement reveals that the debtor owed a balance of $2,209 and made her minimum payment of $70 in February. Finally, on 3–19–91 debtor received a cash advance of $1,875 which brought the account total to the card's credit limit. Account # 1 also reveals the account was issued in the name of Karen E. Olson, 110 Creekmont, Roswell, Georgia. Her address, but not her name, changed three times according to the statements; the 9–4–90 statement (1800 Louisiana St., Minneapolis, MN), the 12–4–90 statement (333 S. Ocean Blvd., Deerfield Beach, FL), and the 2–1–91 statement (3939 N.E. 5th Ave., C–102, Boca Raton, FL).

*Card # 2:* FBC statements date from 7–10–90 through 6–10–91 when the account was listed as three months past due. Activity in this account reveals relatively small amounts charged for store purchases through October, 1990. The debtor also appeared to make minimum payments. On November 7, 1990 debtor received a $1,000 cash advance, on December 7, 1991 another $1,000 cash advance, and on December 27, 1991 another $1,000 cash advance. During this time period she did make her minimum monthly payments. Finally, after no activity in January and February, on 3/21/91 she received a cash advance of $1,500 bringing her to her credit limit of $5,000. Account two reveals the account was issued to Karen E. Olson, 1800 Louisiana Ave., Golden Valley, Minnesota. Her address, but not her name changed two times according to the statements; the 12–11–90 statement (333 S. Ocean Blvd., # 303, Deerfield Beach, FL) and the 1–10–91 statement (3939 N.E. 5th Ave., C–102, Boca Raton, FL).

*Card # 3:* Norwest statements date from 2–14–91 through 5–15–91 when the account was listed as past due. Activity in this account reveals a $664 amount owed to a Dr. Schlapkohl of Lighthouse Point, Florida and a balance transfer of $497.37. She made one minimum payment of $35 on March 11, 1991. Finally on March 22, 1991 she received a cash advance of $1,200 bringing her to her credit limit. The account is in the name of Karen E. Olson,

3939 N.E. 5th Ave., C–102, Boca Raton, Florida. No address or name changes noted.

*Card # 4:* Citibank statements date from 12–24–90 through 6–25–91. The 5–24–91 statement reveals the account was past due and credit privileges suspended. In December, 1990 and January, 1991 debtor incurred various charges at Delray Mazda. The accounts reveal she made her minimum payments of $40 in December, $20 in January, $30 in February, and $30 in March. Her credit limit of $500 at the beginning of these statements was increased to $2,100 in January 1991. On March 25, 1991, debtor received a cash advance of $1,000 bringing her to her credit limit. The account is in the name of Karen O. Edwards at 3939 N.E. 5th Ave., C–102, Boca Raton, Florida. No address or name changes noted.

*Card # 5:* Norwest statements date from 2–20–91 to 5–21–91. This account started and ended with a credit limit of $7,500. The 2–20–91 statements shows a balance due of $2,837.91. She made her minimum payment of $86 in February and $85 in March. Debtor obtained cash advances of $2,300 on March 25, 1991 and $2,350 on March 26, 1991 bringing her to her credit limit. This account with Norwest, unlike Account # 3, is listed in the name of Karen O. Edwards. The address in Boca Raton, Florida, however, is the same.

*Card # 6:* Citibank statements date from 12–1–90 through 7–12–91 when the account was listed as past due. There is no activity in this account until April of 1991. Her credit limit increased from $2,500 to $3,300. Debtor obtained cash advances of $1,500 at Home Federal, Chula Vista, California and $500 at Wells Fargo, Chula Vista, California on 4–8–91. On 5–2–91 she obtained a cash advance of $850 at Marquette Bank, Golden Valley, Minnesota, bringing her account balance to approximately $3,000, the card's cash advance limit. Her account activity is minimal. No payments are shown. This account is listed in the name of Karen O. Edwards, but unlike Citibank Account # 4, her address is listed as 333 S. Ocean Blvd., Deerfield Beach, Florida. No other address or name changes noted.

*Card # 7:* Citibank statements date from 12–1–90 through 6–20–91 when the account is listed as past due. This Citibank account, like Account # 6, contains no activity until April of 1991. The credit limit increased from $5,000 to $6,500. Debtor obtained cash advances of $1,200 at Wells Fargo, Chula Vista, California on 4–10–91, $1,800 at Great Western, Boca Raton, Florida on 4–19–91, and $950 at Norwest Bank, Minneapolis on 5–1–91. Other account activity during a 10–day period from 4–22–91 to 5–2–91 reveals that the debtor charged various store and airline purchases totalling $2,034 ($546 at Saks Fifth Avenue, stores located in both Boca Raton as well as Minneapolis, $117 to Jonay's of Pompano Beach, Florida, $407 at Dayton's in Minneapolis, and $810 to American Airlines, Minneapolis). Debtor's last cash advance, $950 on 5–1–91 at Norwest Bank, Minneapolis, and the Saks and Dayton store charges in Minneapolis on 5–1–91 and 5–2–91 brought the total on her account to $6,198.19. Debtor made a $50 minimum payment on April 22, 1991. This account is listed in the name of Karen O. Edwards, but unlike Citibank, cards # 4 and # 6, her address is listed as 1800 N. Louisiana Ave., Minneapolis, Minnesota. No change in address is noted until the May 21, 1991 statement to 3939 N.E. 5th Ave., C–102, Boca Raton, Florida.

Recapitulations of debtor's name and address changes as well as cash advances as follows are noteworthy.

## NAMES AND ADDRESSES ON ACCOUNTS

**FBC**

| Card # 1: | 8–3–90 | Karen E. Olson | Roswell, GA |
|---|---|---|---|
| | 9–4–90 | Karen E. Olson | Minneapolis, MN |
| | 12–4–90 | Karen E. Olson | Deerfield Beach, FL |
| | 2–1–91 | Karen E. Olson | Boca Raton, FL |

**FBC**

| Card # 2: | 7–10–90 | Karen E. Olson | Golden Valley, MN [2] |
| | 12–11–90 | Karen E. Olson | Deerfield Beach, FL |
| | 1–10–91 | Karen E. Olson | Boca Raton, FL |

**Norwest**

| Card # 3: | 2–14–91 | Karen Olson | Boca Raton, FL |
| Card # 5: | 2–20–91 | Karen O. Edwards | Boca Raton, FL |

**Citibank**

| Card # 4: | 12–24–90 | Karen O. Edwards | Boca Raton, FL |
| Card # 6: | 1–10–91 | Karen O. Edwards | Deerfield Beach, FL |
| Card # 7: | 1–18–91 | Karen O. Edwards | Minneapolis, MN |

### CASH ADVANCES FROM ACCOUNTS

| 9–19–90 | Bankcard Extra Check | Card # 1 | FBC | $1,000 |
| 11–07–90 | Bankcard Extra Check | Card # 2 | FBC | $1,000 |
| 12–07–90 | Bankcard Extra Check | Card # 2 | FBC | $1,000 |
| 12–27–90 | Bankcard Extra Check | Card # 2 | FBC | $1,000 |
| 1–24–90 | Bankcard Extra Check | Card # 1 | FBC | $1,000 |
| 3–19–91 | 1st Union Boca Raton | Card # 1 | FBC | $1,875 |
| 3–21–91 | Great Western Boca Raton | Card # 2 | FBC | $1,500 |
| 3–22–91 | Deerfield Beach Bank, FL | Card # 3 | | $1,200 |
| 3–25–91 | Great Western Boca Raton | Card # 4 | | $1,000 |
| 3–25–91 | Barnett Boca Raton | Card # 5 | | $2,300 |
| 3–26–91 | Lighthouse Point, FL | Card # 5 | | $2,350 |
| 4–08–91 | Home Federal, Chula Vista, CA | Card # 6 | | $1,500 |
| 4–08–91 | Wells Fargo, Chula Vista, CA | Card # 6 | | $ 500 |
| 4–10–91 | Wells Fargo, Chula Vista, CA | Card # 7 | | $1,200 |
| 4–19–91 | Great Western, Boca Raton | Card # 7 | | $1,800 |
| 5–01–91 | Norwest Bank, MN | Card # 7 | | $ 950 |
| 5–02–91 | Marquette Bank, Golden Valley, MN | Card # 7 | | $ 850 |

---

These recapitulations reveal that the debtor, during the half-year or so before she filed bankruptcy, used two names and four different addresses. From March 19, 1991 to May 2, 1991 she withdrew $17,025.00 in cash advances from nine (9) different locations in three different states. Further, she appears to have methodically withdrawn available cash using one card at a time while keeping some accounts current with minimum payments until all credit was exhausted.

Debtor avers she used the funds to "survive" robbing "Paul to pay Peter." The evidence does not support her averment. Rather, the evidence supports a different conclusion. The debtor, during her testimony, was vague about her financial circumstances and generally did not present a demeanor consistent with truthfulness. For at least three years she never earned an annual income over $10,000 or less than $1,000 per month. Hence, her defense that she used the funds to survive is contradicted by the actual numbers. Her defense is further contradicted by the non-cash charges: charges to Saks Fifth Avenue and Daytons are not "necessities." Large cash advances were withdrawn, to the credit limits, in a short period of time prior to the filing of the Petition in bankruptcy. The systematic mode by which the withdrawals were made also indicates her fraudulent intent. From the facts and surrounding

**2.** The Golden Valley, Minnesota address includes the same zip code as the Minneapolis address.

circumstances presented, the Court can conclude that a fraud has been committed. The debtor never intended to repay these debts. See *In re Smith,* 120 B.R. 986, 989 (Bankr.E.D.Ark.1990); see also *In re Collins,* 946 F.2d 815 (11th Cir.1991).

The purpose of the Bankruptcy Code is to provide an honest debtor an opportunity to "start afresh." *Transouth Financial Corporation of Florida v. Johnson,* 931 F.2d 1505, 1508 (11th Cir.1991) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). However, a debtor who attempts to abuse the relief afforded by bankruptcy proceedings is not entitled to the complete protection of the Court. *Id.* Indeed, the nondischargeability provisions were provided in order "that dishonest debtors would not benefit from their wrongdoing." *Collins,* 946 F.2d 815. The Court agrees with the creditors' contention that debtor's pre-petition activities belie honest intentions. The debtor abuses the bankruptcy process. The debtor's discharge should not include the total amounts owed to the three complaining creditors. The Court specifically includes those amounts charged and/or cash advances taken by the debtor prior to the forty (40) day presumptive period of section 523(a)(2)(C). Nothing in the debtor's testimony or any other evidence convinced the Court that she ever intended to repay these accounts.

A separate judgment will be entered in accordance with the foregoing.

IT IS SO ORDERED.