**In re Robert and Melissa BURROW.**

**The ARKANSAS BANK, Plaintiff,**

**v.**

**Robert BURROW, Defendant.**

**Bankruptcy No. 90–30666.**

**AP 91–3021.**

United States Bankruptcy Court, E.D. Arkansas, Jonesboro Division.

Oct. 13, 1992.

---

**814**

Bryant Marshall, Jonesboro, Ark., for the Arkansas Bank.

Jeannette Robertson, Jonesboro, Ark., for debtor.

Warren Dupwe, Jonesboro, Ark., Chapter 7 Trustee.

## MEMORANDUM OPINION

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE came before the Court upon the trial of the complaint to determine dischargeability and an objection to discharge. The complaint in this action stated four counts. Arkansas Bank ("the Bank") asserted that the debt in the approximate amount of $24,000 owed by Robert Burrow is nondischargeable pursuant to Bankruptcy Code section 523(a)(2)(B), (a)(6), because (1) Burrow failed to advise the Bank that the collateral pledged on a loan in 1985 had been damaged, and (2) because parts had been removed from an item of collateral. Secondly, the Bank asserts that Burrow should be denied a discharge pursuant to section 727(a)(2) because he removed parts from a tractor, collateral on one of the loans from the Bank. At trial, the plaintiff moved to amend its pleadings to add a claim under section 727(a)(5), essentially based upon the same facts as the claim under section 727(a)(2). Finally, the Complaint stated a count requesting that the debt be reduced to judgment. In its post-trial brief, the Bank expressly abandoned all causes of action except those stated under sections 523(a)(2)(A) and 727(a)(5). In addition, the post trial brief altered the ground upon which the Bank objects to discharge.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that Counts I, II, and III, of the Complaint are "core proceedings" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(I), (J). Count IV, although not a core-proceeding, was abandoned by the Bank.

Robert Burrow is in the trucking business, having owned his own business and has worked for others. Since approximately 1976, he has been a customer of the Bank, with which he had a good, formal business relationship. Among other trucks and trailers, Burrow owned a 1973 Fruehauf dump trailer and a 1976 Western Star tractor. The 1973 Fruehauf trailer previously was the collateral for a note from the Bank. That note was paid in full in 1983.

In 1984, the tractor and trailer were damaged in a railroad crossing accident. Although the trailer was in repairable condition, Burrow did not have the funds with which to repair it. Burrow was able, however, to repair the tractor inasmuch as his insurance covered the tractor. The insurance check was made payable to Burrow and the Bank.[1] The Fruehauf trailer was hauled to a local salvage yard owned by Charles Martin.[2] Soon after the accident, Burrow went to the Bank and advised his loan officer of the accident.

In December 1985, Burrow obtained another loan from the Bank in the amount of $4,000. The Fruehauf trailer was the col-

---

**1.** From this fact, Burrow argues that the Bank had actual notice that the tractor and trailer were in an accident. The Court believes Burrow's testimony that he advised the Bank of the accident in 1984. The Court also believes the loan officer's testimony that she recalled no such information at the time of the 1985 loan. In 1984 at the time of the accident, the only loan outstanding to Burrow was secured by a 1976 tractor. Accordingly, the Bank made no notation or record of the accident; they had no reason to do so. The Court will not impute a requirement that the loan officer recall a report of damage to a vehicle over one-year before it considers a loan based on that collateral where it had no reason to record the information.

**2.** Martin sold the trailer for scrap on behalf of Burrow. Before the funds were remitted to Burrow, however, Martin filed for protection under the Bankruptcy Code. Burrow obtained no money in the distribution of Martin's bankruptcy estate.

lateral for this loan. The purpose of the loan was, in part, to repair the 1973 Fruehauf trailer. The unrebutted testimony at trial indicated that trailer had an approximate value of $4,500. However, Burrow delayed repairs on the trailer because the various fees associated with towing and repair were significantly higher than expected.

In December 1986, Burrow was timely making his payments on the 1985 loan and obtained another loan from the Bank, this one in the amount of $5,975.47. The collateral for this loan was a dump trailer. Burrow obtained a third loan in September 1987, in the amount of $19,430, secured by a 1976 Western Star Tractor and an assignment of a contract. In December 1988, Burrow consolidated these three loans. Each of the items of collateral securing the 1985, 1986, and 1987 loans remained as collateral for the 1988 loan. In January 1990, Burrow renewed this consolidating loan.

### The Dischargeability Claims

█ The Bank asserts that Burrow's debt is not subject to discharge because he failed to advise the Bank that the 1973 Fruehauf trailer was in damaged condition at the time he obtained the loan in December 1985. In order to prove that the debt is not subject to discharge under section 523(a)(2)(A), the Bank must show that (1) the debtor knowingly made a false representation; (2) the debtor made the representation with the intent to defraud; and (3) the creditor relied upon the false representation to its detriment. *In re Kissinger,* 106 B.R. 180 (Bankr.E.D.Ark.1989). Generally, fraudulent intent is the most difficult element for the plaintiff to prove because it generally must be established by circumstantial evidence. *Matter of Van Horne,* 823 F.2d 1285, 1287 (8th Cir.1987).

The circumstances in this case indicate that the debtor had no fraudulent intent when he applied for a loan in December 1985. Burrow did not state a false value for the collateral inasmuch as the loan was in an amount less than the value of the damaged trailer and he advised the loan

officer that one of the purposes of the loan was to repair the trailer. The Court finds that Burrow did not intend to deceive the Bank when he made an application for a loan secured by the 1973 Fruehauf trailer. There is no evidence which indicates that Burrow made a fraudulent statement or misrepresentation to the Bank.

While testifying, Burrow presented a demeanor consistent with truthfulness. His demeanor and the evidence presented are consistent with the circumstances of the honest debtor who is entitled to the "fresh start" offered by the Bankruptcy Code. Accordingly, the Court finds as a factual matter that there was no fraudulent intent with respect to obtaining credit from the Bank.

### The Objections to Discharge

█ In its post-trial brief, the Bank raised an issue that had not been presented at trial, and requests that it be permitted to amend its pleadings to conform to the evidence. The Court finds that the motion is untimely and will not permit amendment. Even were the Court to permit such amendment pursuant to Rule 15, Federal Rules of Civil Procedure, it would be to no avail.

█ In its post-trial brief, the Bank bases its objection to discharge upon the fact that the 1973 Fruehauf trailer, damaged in 1984, was never repaired, citing 11 U.S.C. § 727(a)(5), which requires an accounting of "any loss of assets or deficiency of assets to meet the debtor's liabilities." In this case there is no unexplained loss of assets. The debtor explained that the trailer had been in damaged condition since 1984, which testimony was unrebutted. The Bankruptcy Code does not place on the debtor an affirmative duty to repair equipment in order to obtain a discharge. The testimony of the debtor was unrebutted that he used the funds from the December 1985 loan in his business. In fact, only one of the reasons for the 1985 loan was repair to the trailer. Burrow timely made payment on this loan, and, at the time it was consolidated with the other loans, a balance of less than $800 remained on that loan. There is simply no circumstance of an

unexplained "loss of assets" meriting a denial of discharge. The actions and demeanor of the debtor indicate to this Court that he is entitled to a discharge in Bankruptcy. Accordingly, it is

ORDERED that the complaint will be dismissed and a separate judgment will be entered in favor of the defendant, Robert Burrow.

IT IS SO ORDERED.