**In re Cathlyne Ellen Camp FRYE, Debtor.**

**Jay M. JORDAN and Patsy L. Jordan, Plaintiffs,**

v.

**Cathlyne Ellen Camp FRYE, Defendant.**

**Bankruptcy No. 84–00674.
Adv. No. 84–0079.**

United States Bankruptcy Court, M.D. Alabama.

Feb. 28, 1985.

Karl B. Benkeith, Jr., and J. Fairley McDonald, III, Montgomery, Ala., for Jay M. Jordan and Patsy L. Jordan.

Earl Gillian, Jr., Montgomery, Ala., for Cathlyne Ellen Camp Frye.

A. Pope Gordon, Montgomery, Ala., Trustee.

## OPINION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

RODNEY R. STEELE, Bankruptcy Judge.

On September 10, 1984, the plaintiffs filed a complaint to have this court determine the dischargeability of a debt in the amount of $40,364.00 interest and costs, based upon a judgment obtained in the Chancery Court of Hamilton County, Tennessee, Case No. 59–918 on May 21, 1984.

The complaint alleges that the defendant's debt to the plaintiff ought not to be discharged because it was a debt incurred in violation of Title 11, United States Code, Section 523(a)(2) and 523(a)(6). Under these sections it is asserted that the debtor/defendant had obtained property by false pretense, false representation or actual fraud, and that the defendant had further incurred a debt for wilful and malicious injury by the debtor to these plaintiffs or the property of these plaintiffs.

The matter came on for hearing on Monday, January 21, 1985, at Montgomery. Present were the defendant and her attorney, and the plaintiffs and their attorney. Testimony was taken from Dr. Frye, from Ms. Lois Ramsey, a real estate agent in Chattanooga, Tennessee, and from Mr. Jay Jordan.

The defendant joined issue generally, and further defended on the grounds that the plaintiffs had acted in bad faith vexatiously, wantonly or for oppressive reasons.

## FACTS

The facts in this case may be summarized briefly as follows: Dr. Cathlyne Ellen Camp Frye is a 1971 graduate of the University of California with a Bachelor of Science degree, and a graduate of the Baylor College of Medicine in 1978. She served at the University of Texas, Galveston Medical School in that year, and her specialty is obstetric anesthesiology. She was a resident at San Antonio at the Health Center for a while, and later worked at the Scott White Clinic in Temple, Texas, with a salary of $68,000 per year.

At some time during 1978, or thereafter, she married Kevin Frye, and in March or April of 1982, she and her husband filed a Chapter 13 bankruptcy in Waco, Texas. The plan was approved, and she undertook to pay $1,000 per month under the plan until she was paid out. Mr. Frye apparently had and has no income of his own.

In May of 1982, Dr. Frye decided to move to Chattanooga, Tennessee, where she had been offered a job at the Erlanger Clinic, at a salary of $100,000 per year, plus some commissions, which she estimated to amount to about $25,000 per year.

She and her husband came to Chattanooga for the interview, and at the same time contacted Ms. Ramsey, a realtor, about a place to live. They were shown a home on Signal Mountain, but the offer to purchase fell through, and Dr. Frye and her husband returned to Texas. Sometime in June, they were notified of the availability of the Jordan home, which was some 15 miles from Chattanooga, and were very enthusiastic. They told Ms. Ramsey that they would purchase the home, sight unseen. Mr. Jordan, however, would not sell under those circumstances, and sometime in June or early July, the Fryes came back to Chattanooga and were shown the Jordan home. They immediately agreed to purchase it. The purchase price was $125,000. Dr. Frye offered $500 down payment, which Mr. Jordan declined. She represented to him that she could not offer more, since she had not earned sufficient income from the Erlanger Clinic to offer more. She offered to pay the $500 cash, plus a $5,000 note. Mr. Jordan accepted this, and the contract for purchase of the home (Plaintiff's Exhibit 1) was executed by Dr. Frye and her husband.

That contract provided for delivery of possession by July 16, 1982. The contract was executed on July 10, 1982. The Jordans thereupon vacated and possession was delivered in accordance with the contract. The purchasers were to pay to the Jordans $1,000 per month, $500 of which was to go toward the purchase price. The other $500 was rental.

The parties agreed to a delayed closing, that is, a closing in early January of 1983.

Dr. Frye commenced her duties at Erlanger Clinic.

After the Fryes moved in, Mr. Jordan, who had moved to Florida, got the first monthly installment in August, but it was only for $500. He called Kevin Frye, who told him they were just getting started in Chattanooga, and he would send the balance at a later time. Later in August, the balance of the $1,000 was supplied. In September, $1,000 was paid to Mr. Jordan. Then in October, only $500 was received.

Jordan then called Kevin Frye in October, and was told that Dr. and Mr. Frye were backing out of the purchase. Kevin Frye told Mr. Jordan at that time that since they were backing out, they only owed for rent, and that the contract was not binding, and that Jordan could not make them pay for the home.

Payments stopped thereafter. Mr. Jordan obtained the services of a lawyer in Tennessee to try to enforce the contract.

Dr. Frye testified that she notified Ms. Ramsey that they were dissatisfied with the house because of some structural defects on the lower level floor, and that the drive into Chattanooga was too far. She testified at trial that her husband, Kevin, was also not returning home at night from Chattanooga, which was of some concern to her.

The Fryes then undertook to locate another home in Chattanooga, and located one on Oak Street. They made arrangements to purchase that property, and paid $10,000 in cash as a down payment. This purchase took place in October or November of 1982. The purchase price was $98,-000. It was owner financed. They moved out of the home purchased from the Jordans in December of 1982. Payments on the Oak Street property were $1,500 per month.

From the uncontradicted testimony, and from pictures put in evidence, the house was left in considerable disrepair. In some instances, it appears to have been abused. The swimming pool was not properly winterized, and suffered considerable damage.

Mr. and Mrs. Jordan and Ms. Ramsey, on behalf of her real estate company, then filed suit in Chancery Court of Hamilton County, Tennessee against Mr. and Mrs. Frye to require them to comply with the contract of purchase. This litigation resulted in a decree entered on June 22, 1983, nunc pro tunc to June 8, 1983, which required specific performance by the defendant and imposed a judgment for attorney's fees and expenses in the amount of $7,500.

After the specific performance decree was entered, the Fryes sought to obtain conventional financing for the Jordan home. It does not appear, however, that they tried to obtain such financing until they were again brought to court in May of 1984, on a contempt citation. All of their applications for conventional financing were rejected. Nor had they made any payments under the decree of June 22 towards payment of attorney's fees before the contempt citation in May of 1984. During this time, the Fryes were represented by two or three different lawyers.

In an effort to show good faith, the Fryes then proffered to the court the sum of $3,000 towards the payment of the attorney's fees, and represented to the court that they had made efforts to obtain conventional financing.

The Chancery Court in Tennessee in May of 1984 then converted the specific performance decree to a decree and judgment for money in the amount of $40,364.

The Chancery Court at that time released the property from the specific performance decree, and the Jordans sought another purchaser and have found one.

During the time when Dr. Frye and her husband were under a decree of specific performance, and in January of 1984, before the contempt citation, the debtor and her husband removed to Montgomery, Alabama. She became employed by a private firm of anesthesiologists at Jackson Hospital at a salary of $125,000 per year. She paid the monthly payments on the Oak Street property in Tennessee until May of 1984, at which time she and her husband separated.

Dr. Frye filed a Chapter 7 bankruptcy proceeding in Montgomery, Alabama on June 1, 1984, apparently while the Chapter 13 proceeding in Texas was still pending.

The real estate sales agreement, which was signed by Dr. Frye and Mr. Frye provided in paragraph 2 that the agreement was subject to the purchaser's securing a conventional loan. The rest of this provi-sion relating to obtaining a conventional loan is not filled out.

Dr. Frye and Kevin Frye, her husband, did not divulge to Ms. Ramsey or the Jordans or the Tennessee Court that they were in bankruptcy in Texas until May of 1984, when they were cited for contempt. Nor did she obtain, from aught that appears, permission of the Bankruptcy Court in Waco to incur this debt.

## CONCLUSION

The facts in this case are more than sufficient to support a finding that the debtors were guilty of having obtained money or property by false pretense or false representation.

Title 11, United States Code, Section 523(a)(2) requires the finding that a debt was incurred for money or property, and that the property or money was obtained by false pretense or false representation or actual fraud.

In this case, there is no question about the debt. It was incurred when the real estate sales agreement and the $5,000 note were signed, and became liquidated and noncontingent by reduction to judgment on August 21, 1984, in the Chancery Court of Hamilton County, Tennessee.

It was a debt for property, that is the premises at 6623 Ramsey Road, Hamilton County, Tennessee, the subject of the sales contract executed on July 10, 1982.

The remaining question is whether the property was obtained by false pretense or false representations or actual fraud. And such false pretense or false representation must occur at the time the property was obtained and the debt incurred.

A number of factors in this case demonstrate that the debtor in this case, Dr. Frye, was guilty of false pretense and false representation, if not actual fraud, when she and her husband signed the contract for the purchase of this property.

■ 1. First and most important of all, the debtor concealed the fact that she was a debtor in a Chapter 13 proceeding in Texas. She had an obligation to divulge

that fact to persons who were dealing with her for such large sums of money. Silence, or the concealment of a material fact, can be the basis of a false impression which creates a misrepresentation actionable under 523(a)(2)(A). See *In re Maier*, (B.C.D. Minn.1984) 38 B.R. 231, 233; *In re Weinstein*, (B.C.E.D.N.Y.1983) 31 B.R. 804, 809.

Dr. Frye testified that she never divulged the fact of her bankruptcy in Texas to any person, involved in this case, until she was brought to court on a contempt citation in 1984 in Tennessee.

2. Dr. Frye never sought a conventional loan for the purchase of this property. We think it is clear that although the contract is conditioned upon the purchaser's securing a conventional loan and not upon their seeking a conventional loan, that the necessary premise of such an undertaking as this is that they would seek a conventional loan for the Ramsey Road property. Dr. Frye never sought such a loan until the contempt proceedings in Tennessee in 1984. She was then refused such loans.

3. Dr. Frye declined the aid of Ms. Ramsey to seek conventional or other financing. This testimony by Ms. Ramsey lends color to the plaintiff's assertion that the debtors never intended to purchase this property.

4. Dr. Frye offered only $500 down to Mr. Jordan, and when this was refused, she offered $500 down and a $5,000 note as down payment, and then never paid the note.

5. Dr. Frye paid only $500 the next month and thereafter told Jordan through her husband when Mr. Jordan called, that they were not yet established, but would send the rest of the funds when they did become available. But Dr. Frye knew at this time that $500 of the $1,000 per month payment was for rent, and the other $500 on the purchase price. The amount of money which was actually sent as monthly payments, when spread out over the number of months which they actually occupied the premises, shows that they paid only about $500 per month, an equivalent of rent for the months they occupied the premises: another indicia that they did not intend to purchase.

6. Dr. Frye and her husband found fault with the house after they moved in when, according to Ms. Ramsey who visited the house immediately after such complaint, there were only minor problems. There were no major faults with the house, and the Chancery Court in Tennessee found that the house had not changed or altered at all since the Fryes moved into it in July.

7. When Dr. and Mr. Frye defaulted in October of 1982, by sending only $500, they responded to Mr. Jordan's telephone call by telling him that they were not bound by the contract and could move at any time they wanted to, and there was nothing he, Jordan, could do about it.

8. Dr. Frye and her husband moved out and left the house uncared for in December of 1982. It was, in effect, to them a rental house.

9. Dr. Frye and her husband paid $10,000 cash down payment on another home on Oak Street in Chattanooga, Tennessee, when they had paid only payments of approximately $3,000 on the Ramsey Road property. They were thus in a position financially to pay Mr. Jordan and his wife for the Ramsey Road property.

10. Dr. Frye and her husband refused to comply with the specific performance decree of the Tennessee court for almost a year, from June 22, 1983, to May 21, 1984. They also left the jurisdiction of that court without any effort to comply and removed to Montgomery, Alabama.

11. Dr. Frye had a salary plus commissions during the time she worked for the Erlanger Clinic of approximately $125,000 per year, and during all this time, she refused to obey the Chancery Court decree of June 22, 1983, and May 21, 1984, to make payment of attorney's fees and costs to Mr. Jordan and Ms. Ramsey.

12. Dr. Frye filed a Chapter 7 bankruptcy proceeding in Montgomery, Alabama, while she was still apparently subject to

the jurisdiction of the Texas Bankruptcy Court in Chapter 13.

The crucial element in all of these factors above listed revolves around the fraudulent or false intent of Dr. Frye. Direct proof of intent is, of course, often impossible to obtain. But the circumstances as outlined above, infers the necessary intent. Intent to deceive may be inferred when the totality of circumstances presents a picture of the deceptive conduct by the debtor. Representations and conduct are sufficient to permit a court to make inferences as to the requisite intent. See *In re Leger*, (B.C.D.E.Mass.1983), 34 B.R. 873, 877.

The above circumstances clearly show that Dr. Frye and her husband never intended to go through with the purchase contract when they signed it. They misrepresented their intentions at least, in executing the contract, inducing the Jordans to remove from the home and to seek another place to live in Florida, and to lose the proceeds of the sale which were desperately needed by the Jordans for other mortgage debts which they had previously incurred and which would have been liquidated by the payments made by this debtor.

But Dr. Frye is also guilty of a wilful and malicious injury to the property of Mr. and Mrs. Jordan on Ramsey Road in Chattanooga.

Under Title 11, United States Code, Section 523(a)(6), a debt may be excepted from discharge upon a showing that there was a wilful and malicious injury by the debtor to another entity or to the property of another entity. In this case, the property in question, the house at 6623 Ramsey Road in Chattanooga, was, according to the pictures and according to the testimony of Ms. Ramsey, abused and left exposed without any protection or insurance. The pool was left unprotected during winter months. The new purchasers from the Jordans in 1984 have been required to expend some $2,600 in repairs, and additional sums will be needed to make the house habitable. We think the wilful and malicious elements required here may be inferred from the "don't-care" attitude shown by these facts. Moreover, Dr. Frye refused or neglected to abide by the specific performance decree of the Hamilton County Chancery Court, which adds additional color to the abandonment of the premises. We are, moreover, impressed that additional color may be taken from the fact that, as found above, there was a clear misrepresentation of intention and concealment of important facts from the Jordans and from Ms. Ramsey.

There was, moreover, a wilful and malicious injury to another entity, namely, these plaintiffs, when the debtor abused the house knowing that the plaintiffs had vacated early and were still making mortgage payments to others and they never intended to purchase the house.

All of these factors lead us to the inescapable conclusion that Dr. Frye is guilty of a violation of Title 11, United States Code, Sections 523(a)(2) and 523(a)(6). The debt, liquidated in the Chancery Court of Hamilton County, Tennessee, is therefore a nondischargeable debt in the amount of $40,364, interest and costs. An appropriate order will enter in these proceedings.