HEANEY, Circuit Judge.
 

 Michael Van Horne appeals from a final decision of the district court affirming the bankruptcy court’s ruling that the debt he owed to his ex-mother-in-law, Margaret Caspers, was not dischargeable under 11 U.S.C. § 523(a)(2)(A). Both lower courts found that Van Horne fraudulently obtained a renewal of a loan from Caspers by misrepresentation thus rendering the debt nondischargeable. We affirm.
 

 I. FACTS
 

 At first glance, this case appears to be nothing more than a family fall-out. When viewed more closely, however, Caspers’ claim presents the important question of what, if anything, a debtor must disclose to a creditor who lends money solely on the basis of their personal relationship. The bankruptcy court found — and the district court upheld on appeal — that in January of 1978, Van Horne obtained a loan for $30,-000 from his mother-in-law in exchange for a four-year note due on February 1, 1982. Although he made quarterly interest payments over the period of the note, Van Home did not pay the principal when it came due.
 

 Between February, 1982, and July, 1982, the parties discussed possible new arrangements for extending Van Horne’s credit. In July, 1982, Van Horne brought the interest current and paid $2,000 of the principal. On August 10, 1982, Caspers accepted a new note in the amount of $28,000, with a due date of August 10, 1986. Van Home never made any payments on the August 10 note. Neither the bankruptcy court nor the district court, however, found that Van Horne was insolvent at the time he negotiated the refinancing of the loan.
 

 Van Horne moved out of his family home approximately five days after receiving the renewal of credit. Twelve days later, on August 27,1982, Van Horne filed a petition for divorce from Caspers’ daughter. Van
 
 *1287
 
 Home filed for bankruptcy on October 12, 1984. On January 7, 1985, Caspers filed this adversary complaint alleging non-dis-chargeability of the $28,000 debt.
 

 The bankruptcy court found that 1) at the time Van Home negotiated the renewal of credit, he intended to divorce Caspers’ daughter; 2) he intentionally concealed that fact from Caspers in order to obtain the new loan; and, 3) Caspers would not have renewed the loan had she known that Van Home intended to divorce her daughter.
 

 The district court affirmed, holding that the bankruptcy court’s findings were not clearly erroneous. Based on those findings, the court held that Van Home’s intentional concealment amounted to the type of actual fraud that renders a debt nondis-chargeable pursuant to section 523(a)(2)(A).
 

 On appeal, Van Home argues that 1) the bankruptcy court erred in finding that Cas-pers proved by clear and convincing evidence that he intended to divorce her daughter prior to negotiating the renewed credit; and, 2) even assuming such an intention, his failure to inform Caspers did not constitute the type of fraud that renders á debt non-dischargeable under the Bankruptcy Code.
 

 II. DISCUSSION
 

 The district court was bound by the bankruptcy court’s findings unless they were clearly erroneous.
 
 In re Hunter,
 
 771 F.2d 1126, 1129 n. 3 (8th Cir.1985). The district court was also obligated to accord “due regard * * * to the opportunity of the bankruptcy court to judge the credibility of the witnesses.” Bankr.R. 8013. Finally, both “lower courts’ findings * * * are binding upon this court unless clearly erroneous.”
 
 In re Long,
 
 774 F.2d 875, 877 (8th Cir.1985).
 

 A. Proof of Intent
 

 Section 523(a)(2)(A) of the Bankruptcy Code provides:
 

 (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
 

 ******
 

 (2)for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
 

 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor’s or an insider’s financial condition.
 

 11 U.S.C. § 523(a)(2)(A). To succeed in a section 523(a)(2)(A) claim, the creditor must prove the following elements:
 

 (1) that the debtor made false representations;
 

 (2) that at the time made, the debtor knew them to be false;
 

 (3) that the representations were made with the intention and purpose of deceiving the creditor;
 

 (4) that the creditor reasonably relied on the representations; and,
 

 (5) that the creditor sustained the alleged injury as a proximate result of the representations having been made.
 

 In re Jenkins,
 
 61 B.R. 30, 39 (Bankr.D.N.D.1986). Creditors bear the burden of proof, Bankr.R. 4005, and must prove each element of their claim by clear and convincing evidence.
 
 In re Canon,
 
 43 B.R. 733, 735 (Bankr.W.D.Mo.1984). Moreover, any evidence presented must be viewed consistent with the congressional intent that exceptions to discharge be narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code.
 
 In re Jenkins,
 
 61 B.R. at 39. These considerations, however, “are applicable only to honest debtors.”
 
 In re Hunter,
 
 771 F.2d at 1130.
 

 Because direct proof of intent
 
 (i.e.,
 
 the debtor’s state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred.
 
 See In re Simpson,
 
 29 B.R. 202, 211 (Bankr.N.D.Ia.1983).
 
 Accord In re Frye,
 
 48 B.R. 422, 427 (Bankr.M.D.Ala.1985);
 
 In re Brown,
 
 55 B.R. 999, 1004 (Bankr.E.D.N.Y.1986). When the creditor introduces circumstantial evidence proving the debtor’s intent to deceive, the debtor “cannot overcome [that] inference with an unsupported assertion of honest intent.”
 
 In re Simpson,
 
 29 B.R. at
 
 *1288
 
 211-12. The focus is, then, on whether the debtor’s actions “appear so inconsistent with [his] self-serving statement of intent that the proof leads the court to disbelieve the debtor.”
 
 In re Hunt,
 
 30 B.R. 425, 441 (M.D.Tenn.1983).
 

 Van Horne contends that Caspers failed to prove intent to deceive by clear and convincing evidence. The bankruptcy court and the district court held, however, that Caspers satisfied this burden of proof. Both Van Horne and Caspers appeared before the bankruptcy court. Caspers testified that Van Horne did not mention his marital situation when she renewed his credit, but moved out of his family home only five days after receiving the renewal and later filed for divorce. Van Horne, on the other hand, asserted that he did not intend to divorce Caspers’ daughter prior to the August 10,1982, signing of the note. Both lower courts found specifically that Van Horne’s actions following the note signing clearly showed that Van Horne intended to deceive Caspers and that he could not overcome that proof merely through his unsupported assertions to the contrary. Upon review of the record, neither of those rulings is clearly erroneous.
 

 B. Obtaining Money Through False Pretenses
 

 Van Horne contends that, even assuming Caspers proved he knowingly concealed his intention to divorce her daughter, that omission — as a matter of law — cannot serve as the basis for an action under section 523(a)(2)(A). Specifically, Van Horne argues that only positive or overt fraud renders a debt nondischargeable under the Bankruptcy Code.
 

 Bankruptcy courts have overwhelmingly held that a debtor’s silence regarding a material fact can constitute a false representation actionable under section 523(a)(2)(A).
 
 See Jenkins,
 
 61 B.R. at 40;
 
 Matter of Weinstein,
 
 31 B.R. 804, 809 (Bankr.E.D.N.Y.1983);
 
 In re Maier,
 
 38 B.R. 231, 233 (Bankr.D.Minn.1984);
 
 In re Frye,
 
 48 B.R. at 426;
 
 In re Samford,
 
 39 B.R. 423, 427 (Bankr.M.D.Tenn.1984);
 
 Matter of Cheatham,
 
 44 B.R. 4, 8 (Bankr.N.D.Ala.1984);
 
 H.C. Prange Co. v. Schnore,
 
 13 B.R. 249, 252-254 (Bankr.W.D.Wis.1981).
 
 But see In re Hunter,
 
 780 F.2d 1577 (11th Cir.1986) (holding that false representations regarding a debtor’s financial condition must be overt to come within the discharge exception). Clearly, the Bankruptcy Code did not intend to protect property obtained by “deceit, artifice, trick [or] design.”
 
 In re Simpson,
 
 29 B.R. at 209. A borrower has the duty to divulge all material facts to the lender.
 
 Matter of Newmark,
 
 20 B.R. 842, 855 (Bankr.E.D.N.Y.1982). While it is certainly not practicable to require the debtor to “bare his soul” before the creditor, the creditor has the right to know those facts touching upon the essence of the transaction.
 

 The lower courts found that Van Horne intended to deceive Caspers in order to obtain the new credit. In light of that finding, it is clear that the fruits of that deceit — whether achieved by omission or commission — should not be shielded by the Bankruptcy Code. Here, had Caspers known of Van Horne’s decision to divorce her daughter she would not have renewed his credit. Obviously, she knew of his financial difficulties; that was the reason for the loan. But his relationship with her daughter, as the record clearly shows, was the
 
 raison d’etre
 
 for the renewal of credit. Under those circumstances, Van Horne’s failure to disclose his intention to divorce Caspers’ daughter constituted a material omission actionable under section 523(a)(2)(A).
 

 C. Proximate Causation
 

 Finally, Van Horne claims that even if his omission can, as a matter of law, serve as the basis of Caspers’ action, his failure to inform Caspers of his intent to divorce her daughter did not proximately cause the loss she now complains of. As noted earlier, Caspers must prove that Van Horne’s silence proximately caused her loss. “The proximate cause element of § 523 requires simply that the action of the debtor was the act, without which the claimant would not have suffered the loss
 
 *1289
 
 complained of.”
 
 In re Maier,
 
 38 B.R. at 233.
 

 Both lower courts found specifically that Caspers would not have renewed Van Horne’s credit if she knew he intended to divorce her daughter. Van Home asserts, however, that the loss occurred in 1978 when Caspers first made the loan, a time when Van Home admittedly had no intent to divorce Caspers’ daughter. He argues that if he had fully disclosed his intention to divorce Caspers’ daughter in August of 1982 — and Caspers, accordingly, refused to renew his loan — the debt would have been dischargeable under the Bankruptcy Act, had he refused to pay it at that time.
 

 Part of the difficulty with Van Horne’s argument is that he mischaracterizes the nature of Caspers’ claim. The issue here does not involve the original debt; rather, the question is whether Van Horne is entitled to discharge the $28,000
 
 renewal.
 
 That is the damage allegedly caused by Van Horne’s deceit.
 
 [1]
 
 In renewing Van Horne’s entire debt, Caspers necessarily waived any right to foreclose on the original loan when it came due. In addition, Caspers postponed the date of maturity and altered the interest terms contained in the original note. We are not faced with a situation in which the creditor stands to receive a windfall under the Bankruptcy Code.
 
 Cf. In re Hunter,
 
 771 F.2d at 1130 (when creditor refinances only a small portion of debt based on debtor’s fraudulent conduct, not discharging entire loan would unjustificably reward creditor). Moreover, these are all losses identified by Congress as grounds for refusing to discharge fraudulently-renewed credit.
 
 See
 
 H.R.Rep. No. 595, 95th Cong., 2d Sess.,
 
 reprinted in
 
 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6090-91. As a matter of law, therefore, Caspers proved that Van Horne’s deceit proximately caused the damage she now complains of — the refinancing of his entire debt.
 

 III. CONCLUSION
 

 Accordingly, we affirm the district court’s decision upholding the bankruptcy court’s ruling that the debt owed by Van Horne to Caspers is not dischargeable under the Bankruptcy Code.
 

 [1]
 

 . Van Horne did not present any evidence to either of the courts below or to this court indicating that he was insolvent at the time he renewed his loan obligation. It is not necessary, therefore, to reach the question of which party to a nondischargeability proceeding bears the burden of proving the debtor’s solvency at the time of renewal.