In re Bobby C. MASK, Jr., Debtor.

Robert J. HELLMANN, Jr., Plaintiff,

v.

Bobby C. MASK, Jr., Defendant.

Bankruptcy No. 93–46016–172.
Adv. No. 94–4127–172.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Aug. 24, 1994.

Terry A. Bond, Clayton, MO, for plaintiff.

William F. Whealen, Jr., Clayton, MO, for debtor/defendant.

### *MEMORANDUM*

JAMES J. BARTA, Bankruptcy Judge.

The trial of this adversary proceeding was conducted on August 15, 1994 and August 16, 1994. At the conclusion of the trial, the Court announced its determinations and orders from the bench.

This is a core proceeding pursuant to Section 157(b)(2)(I) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Rule 29 of the Local Rules of the United States District Court for the Eastern District of Missouri.

Robert J. Hellmann, Jr. ("Plaintiff") filed a two-count adversary complaint against Bobby C. Mask, Jr. ("Defendant"), requesting a determination of the dischargeability of certain credit card debts, and a money judgment. In Count I, the Plaintiff requested that the Court find that certain debts are not dischargeable pursuant to 11 U.S.C. § 523(a)(4) as having been based on embezzlement and larceny. The Plaintiff also requested a money judgment in the amount of $20,300.00 plus finance charges. In Count II, the Plaintiff requested a determination of nondischargeability pursuant to 11 U.S.C. § 523(a)(2) for obtaining money by false pretenses and/or for actual fraud. Count II also contained a request for a money judgment in the amount of $20,300.00 plus finance charges. The Defendant filed an answer that denied the substantive allegations of the complaint and set forth certain affirmative defenses, including an allegation that the Plaintiff had failed to mitigate his damages. Both parties submitted testimony and other evidence at the trial.

The Plaintiff alleged that the Defendant had "sent through credit card vouchers indicating that Plaintiff had charged for merchandise" at the Defendant's jewelry store. *Adversary Complaint, p. 2, ¶ 8, filed February 11, 1994, Adversary Proceeding Number 94–4127–172.* The Plaintiff argued that these credit card charges had not been authorized.

The Plaintiff first met the Defendant in early December 1988, when he made a purchase from the Defendant at the Defendant's jewelry store. This purchase was made with the Plaintiff's Visa credit card. The day before this purchase, the Plaintiff had used his Master Card credit card to place a $100.00 deposit with the Defendant. On several occasions thereafter, the Plaintiff used these credit cards to make other jewelry purchases from the Defendant.

In February 1989, the Plaintiff identified certain unauthorized credit card charges on his monthly credit card statements. The charges had originated at the Defendant's jewelry store. The Plaintiff contacted the Defendant and told him that the charges were not authorized. The Defendant agreed that the charges would be taken off of the Plaintiff's account. In March 1989, the Plaintiff believed that the unauthorized

charges had been removed when he received the next monthly statement reflecting a credit to his account. However, after comparing the statements on the Master Card account with the statements on the Visa account, the Plaintiff determined that unauthorized charges on one account were being satisfied by unauthorized charges being placed against the other account. A summary of the unauthorized charges as they appear on Plaintiff's Exhibits 1, 2, 3, 4, 5 and 12 is set out below.

| NO. | DATE | VISA | MASTER CARD | COMMENTS |
|---|---|---|---|---|
| 1 | 1/10/89 | $7,000 | | Satisfied by MC No. 4 |
| 2 | 1/10/89 | | $3,200 | Satisfied by Visa No. 5 |
| 3 | 1/24/89 | | $2,600 | Satisfied by Visa No. 5 |
| 4 | 2/09/89 | | $7,000 | Satisfied by Visa No. 7 |
| 5 | 2/24/89 | $5,800 | | Satisfies MC No. 2 and 3 |
| 6 | 3/10/90 | | $7,500 | Satisfied by Visa No. 8 |
| 7 | 3/27/90 | $7,000 | | Satisfies MC No. 4 |
| 8 | 6/04/90 | $7,500 | | Satisfies MC No. 6 |

The Defendant has admitted that he filled out all of the credit card vouchers and credit slips summarized above except for the two documents dated January 10, 1989. He testified further that he prepared the other documents with the Plaintiff's authorization. The Plaintiff testified that none of these transactions had been authorized.

Through March 27, 1989, the net amount of the unauthorized charges that had been placed against the Plaintiff's accounts was $12,800.00. *Plaintiff's Exhibit No. 12.* On May 1, 1989, the Debtor and his nondebtor business partner signed a document that referred to a loan from the Plaintiff to the Defendant's business in the principal amount of $12,800.00. *Plaintiff's Exhibit No. 7.* The Plaintiff denied having made such a loan. Although this document provided for fourteen monthly payments, the Plaintiff received only nine payments in the amount of $1,065.21 each. The Plaintiff testified that over a period of time, he and his wife repaid the full $12,800.00 to the credit card company.

During 1990, the net amount of unauthorized charges on the Plaintiff's accounts was $7,500.00. *Plaintiff's Exhibit No. 4.* During the period represented by these credit card transactions, the Defendant's partner was no longer associated with this business, and only the Defendant had the authority to cause these transactions. The Defendant testified that the 1990 transactions involved a loan from the Plaintiff to pay off past due advertising costs. The Plaintiff denied having made a loan in the amount of $7,500.00. The Defendant was unable to recall the terms of this loan, and no loan documents were produced at this trial.

Between July 12, 1991 and October 12, 1991, the Defendant gave the Plaintiff four checks in the amount of $2,500.00 each, drawn on the Defendant's business account. Each check was dishonored by the payor bank because of insufficient funds. *Plaintiff's Exhibit No. 6.*

The Plaintiff testified that on November 11, 1989, he issued a check in the amount of $5,000.00 to the Defendant as a loan. *Plaintiff's Exhibit No. 13.* Although the loan was never fully repaid, the Plaintiff received items of jewelry that were to be credited against the balance. The Plaintiff has not requested a judgment for the remaining balance on this loan.

The Defendant's testimony that these various credit card transactions were in fact loans from the Plaintiff is not supported by the evidence in this matter. The Defendant testified further that the 1990 transactions were associated with the remarriage of the Plaintiff's father-in-law. However, the Plaintiff testified that his father-in-law had not met his second wife until the Fall of 1992, more than one year after his first wife had passed away, and two years after the 1990 transactions.

This proceeding is limited to a determination of the dischargeability of a debt owed by this Defendant, and is not a proceeding to determine the liability or culpability of any other possible joint obligor or obligors.

■ The record here has established that the Plaintiff paid the credit card bills in the amount of $12,800.00 in full; that the Plaintiff has been billed for, and continues to be liable for the credit card debt in the amount of $7,500.00; and that the Plaintiff has paid interest to the credit card company on the $7,500.00 amount. A review of the Defendant's schedules and statements of affairs· has revealed that the Defendant has requested a discharge of the debt owed to this Plaintiff. Therefore, the Plaintiff enjoys standing to bring this action to determine dischargeability of the debt.

The Court finds and concludes that the record has established that the Defendant and others signed credit card vouchers and credit slips on the Plaintiff's accounts in the Defendant's and/or other's own individual capacity and not on behalf of, or as a representative of, any other entity. The Defendant's actions complained of in this proceeding were the Defendant's individual acts that resulted in damages to this Plaintiff.

■ Furthermore, the record has established that the Defendant acted willfully and knowingly when he executed and submitted the credit card invoices, credit slips and other documents on the Plaintiff's credit card accounts. The Court finds and concludes further that the Defendant executed and submitted these credit card invoices, credit slips and other documents without authorization from the Plaintiff. These willful and knowing actions of the Defendant resulted in damages to the Plaintiff.

■ The record has not established that the Defendant acted in a fiduciary capacity or while any of the Plaintiff's property had been entrusted to the Defendant. Therefore, Count I of the Plaintiff's complaint, based upon embezzlement and larceny, will be denied.

■ To establish nondischargeability under Section 523(a)(2)(A), a party must prove that a debtor acted with the intent to defraud. *See In re Van Horne,* 823 F.2d 1285 (8th Cir.1987). Intent is rarely provable directly. *Id.* at 1287. However, a court may find that a debtor acted with a fraudulent intent after a consideration of the facts and circumstances surrounding a debtor's actions. *Id.* On consideration of the testimony presented at trial and on consideration of the record as a whole, the Court finds and concludes that the Plaintiff's recitation and interpretation of the parties' dealings are corroborated by the circumstances surrounding the Defendant's actions as they have been presented in this matter.

■ The record has established that the Defendant engaged in a scheme to defraud this Plaintiff when he executed and submitted the unauthorized credit card invoices and credit slips, even though ultimately, his actions may have benefited other persons as well as himself. The Defendant's testimony is not supported by the exhibits and other evidence in this case. The Court finds and concludes further that the Defendant's actions in executing these credit card invoices and credit slips were performed with an intent to defraud the Plaintiff, and that the Defendant's obligations as a result thereof are not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) based upon actual fraud.

■ The Plaintiff's request for a money judgment will be granted in part. Although the Plaintiff has not actually paid the credit card bill in the amount of $7,500.00, he actually paid interest on the principal in the amount of $8,296.35. Furthermore, he continues to be liable for the payment of the principal amount of $7,500.00. Therefore, the money judgment shall include the amount of $15,796.35, the sum of the principal owed plus the interest paid.

■ The Plaintiff actually paid the amount of $12,800.00 to the credit card company. The document which is Plaintiff's Exhibit No. 7 (Defendant's reference to a $12,800.00 loan) is related to the credit card transactions described in this proceeding. There is no evidence of any separate loan of money by the Plaintiff to the Defendant or to any other entity in the amounts listed in Plaintiff's

Exhibit No. 7. To that extent, the Defendant's obligations under Plaintiff's Exhibit No. 7 are not separate from the credit card transactions. Therefore, the money judgment in this matter will include the amount of $12,800.00 minus the nine payments made under Exhibit No. 7. The net amount to be included in this judgment is $3,213.11. The total amount of the nondischargeable judgment is $19,009.46. Judgment will be entered in a separate order.

The Defendant has argued that the judgment award should be mitigated because of the Plaintiff's failure to limit his liability as provided by federal statutes such as 15 U.S.C. § 1643. After a review of this section and other related sections, the Court has determined that the limitation of liability described therein deals with the relationship between the card issuer and the card holder. Furthermore, the card holder's right to limit liability under these statutes is not mandatory, and a failure to exercise this right does not of itself reduce or eliminate the Defendant's liability to this Plaintiff for fraudulent acts. The Defendant's affirmative defenses will be denied.

## ORDER

At Saint Louis, in this District, this 24th day of August, 1994.

Consistent with the Memorandum entered in this matter,

**IT IS ORDERED** that this matter is concluded; and that judgment on Count II of the Plaintiff's Complaint is entered in favor of the Plaintiff and against the Defendant; and that the debt owed by Bobby C. Mask, Jr., Defendant/Debtor, is not dischargeable in this Bankruptcy case pursuant to 11 U.S.C. § 523(a)(2)(A); and

That as and for judgment in this matter, the Defendant/Debtor is to pay to Robert J. Hellmann, Jr., Plaintiff, the amount of $19,009.46; and that said judgment amount is not dischargeable in this Bankruptcy case; and

That Count I of this Complaint is denied; and

That the Defendant's affirmative defenses are denied.