In re James BARNES and Shirley
Barnes, Debtors.

Regency Motors, Inc., Plaintiff,

v.

James Barnes and Shirley
Barnes, Defendants.

Bankruptcy No. 00–46475–293.
Adversary No. 00–4202–293.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

July 3, 2001.

**196**

Rick L. Nelson, St. Louis, MO, for Debtors/Defendants.

James L. Van Dillen, Van Dillen and Flood, P.C., Clayton, MO, for Plaintiff.

David Sosne, St. Louis, MO, trustee.

### MEMORANDUM OPINION

DAVID P. MCDONALD, Chief Judge.

Plaintiff Regency Motors, Inc. filed this adversary proceeding to determine the dischargeability of a debt incurred from the sale of an automobile. Regency asserted that Debtors James and Shirley Barnes committed fraud when they sold the vehicle to Regency by failing to disclose the existence of a prior lienholder. Regency alleged that the debt is excepted from discharge under 11 U.S.C. § 523(a)(2)(A). After a trial on the merits, the Court finds that Regency failed to establish that Defendants acted fraudulently and, therefore, the debt is dischargeable.

### *Jurisdiction and Venue*

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409.

### *Procedural Background*

On December 30, 1997, Debtors James Barnes and Shirley Barnes (collectively referred to as "the Barnes") filed for bankruptcy relief under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330. On February 2, 1999, that case was dismissed for a failure to make planned payments.

On June 30, 2000, the Barnes filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code. The first meeting of creditors was concluded on July 27, 2000. An order discharging the Debtors was entered on October 3, 2000.

Regency filed this adversary proceeding on September 1, 2000. Regency alleged that the Barnes committed fraudulent conduct during the sale of their 1995 Mitsubishi to Regency. Regency alleged that the Barnes purposely failed to reveal the presence of a lien on the vehicle. Regency obtained a state court default judgment in the amount of $25,000.00 based on fraudulent misrepresentation by the Barnes concerning the sale of the vehicle. Regency sought to have the debt incurred surrounding the purchase of the Barnes' car to be declared excepted from discharge under 11 U.S.C. § 523(a)(2)(A). The Court tried this case on December 4, 2000.

### *Findings of Fact*

The Court makes the following findings of fact based on the pleadings, stipulated facts, exhibits, and trial testimony:

1. On June 11, 1997, the Barnes purchased a 1995 Mitsubishi Galant from Christopher Chevrolet, Inc., d/b/a/ Auffenberg Chevrolet, for $16,641.95. Auffenberg arranged for the financing of $15,010.22 of the purchase price through AmeriCredit Financial Services, Inc. Auffenberg provided the Barnes with a title application indicating that AmeriCredit had a lien on the vehicle.

2. AmeriCredit had concerns over the loan and ultimately refused to finance the vehicle purchase and returned the financing documents with a lien release.

3. On July 1, 1997, Auffenberg rewrote the deal and directly financed $14,199.34 of the purchase price of the vehicle. A new financing agreement was entered between Auffenberg and the Barnes that day. Auffenberg provided the Barnes with a second title application. However, this second title application, dated July 1, 1997 and admitted at trial, again listed AmeriCredit as the sole lienholder.

4. On August 14, 1997, Auffenberg sent the Barnes a letter reminding them that AmeriCredit declined to finance the vehicle purchase. The letter stated that all payments on the loan should be sent directly to Auffenberg and that Auffenberg should be designated as the lienholder on the title to the vehicle.

5. On September 5, 1997, Auffenberg submitted the necessary documents to perfect its lien on the vehicle with the Missouri Department of Revenue. The Barnes, however, had not yet submitted a title application for the vehicle.

6. The Barnes did not submit their title application to the Department of Revenue until January 24, 1998. The application that Barnes submitted was the one prepared on June 11, 1997 by Auffenberg. The lienholder section listed AmeriCredit as the lienholder. No other lienholder was listed on the application. A Department of Revenue employee discovered the lien release from AmeriCredit and placed a white-out label over AmeriCredit's name on the application. Apparently due to the out of synch filings of Auffenberg's lien and the Barnes' application for title, the Department of Revenue issued an original certificate of title in the name of Shirley and James Barnes which failed to reflect that Auffenberg had a lien on the vehicle.

7. On December 30, 1997, several weeks before they submitted their application for title, the Barnes filed for bankruptcy relief under Chapter 13. Auffenberg was listed as a creditor in that filing. Auffenberg never filed a proof of claim in that case nor did Auffenberg seek a relief from stay. The case was ultimately dismissed on February 2, 1999, for a failure to make planned payments.

8. In February 1999, Auffenberg was notified of the dismissal of the Barnes Chapter 13 bankruptcy. Upon an inquiry with the Department of Revenue Auffenberg discovered that the title to the vehicle issued to the Barnes did not show Auffenberg's lien.

9. The Barnes had defaulted on the loan from Auffenberg after making four payments and in February 1999 owed approximately $20,000.00 on the note.

10. On March 3, 1999, shortly after their Chapter 13 case was dismissed, the Barnes sold the vehicle to Plaintiff Regency Motors, Inc. for $4,500.00.

11. The Director of the Department of Revenue, by letter of March 11, 1999, asked the Barnes to return the title of the vehicle to the Department to allow it to be corrected to reflect that Auffenberg had a lien. By this date the Barnes had already sold the vehicle.

12. On March 13, 1999, Regency resold the vehicle to Schnell Reed for $9,995.00.

The purchase of the vehicle was financed by Mercury Finance Company.

13. Reed submitted an application for title on the vehicle on April 14, 1999. The Department of Revenue informed Reed that Auffenberg had a prior lien on the car. Reed sought to expunge Auffenberg's lien by pursuing administrative procedures with the Department of Revenue.

14. The Director of the Department of Revenue issued a decision on June 16, 1999, stating that Auffenberg had a first lien on the vehicle and that Mercury had a second lien. That decision was confirmed by the Missouri Administrative Hearing Commission on January 19, 2000. The Committee ordered the title to be issued showing both liens.

15. Reed demanded that Regency clear up the lien problem. On February 9, 2000, Regency paid Auffenberg $5,500.00 in exchange for Auffenberg's lien release. Regency also paid Reed $430.00 as a settlement for a full release of all claims that Reed may have had against Regency for selling the vehicle without a clean title.

16. On May 11, 2000, Regency obtained a default judgment against the Barnes from the Circuit Court of St. Louis County, Missouri for the damages that Regency incurred to obtain clear title to the vehicle. Regency was awarded $7,000.00 in actual damages and $18,000.00 in punitive damages for a total default judgment award of $25,000.00.

17. On June 30, 2000, the Barnes filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code. Both Regency and Auffenberg were listed in the creditor's matrix. An order of discharge was entered on October 3, 2000.

18. Regency filed the present adversary proceeding on September 1, 2000. Regency's Complaint sought to have any debt owed to it by the Barnes, including its $25,000.00 state court judgement[1], be declared excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

19. At trial Regency sought damages in the amount of $9,930.00 which included the $5,500.00 paid to Auffenberg, the $430.00 paid to Reed, and $4,000.00 in attorney's fees.

### Discussion

The question in this case is whether the Barnes committed fraud or a fraudulent misrepresentation when they sold their 1995 Mitsubishi Galant to Regency. The key issue is whether the Barnes knowingly concealed the fact that Auffenberg Chevrolet had a lien on the car when the Barnes sold it to Regency. Regency asserted that they did and that 11 U.S.C. § 523(a)(2)(A)[2] excepts from discharge any debt owed to it by the Barnes arising from the sale of the vehicle.

---

1. The Court notes that Regency abandoned any claim to enforce the state court judgement. At trial Regency sought only to recover damages in the amount of $9,930.00 which included the $5,500.00 paid to Auffenberg, the $430.00 paid to Reed, and $4,000.00 in attorney's fees. In addition, the state court judgment was entered in default and as such had no preclusive effect to the present case. *See In re Garner*, 881 F.2d 579 (8th Cir. 1989)(rev'd on other grounds)(res judicata does not apply to dischargeability proceedings and collateral estoppel does not attach when an issue is not actually litigated but rather the product of a default judgment). Based on the outcome of the present case, the state court judgement is not excepted from discharge under § 523(a)(2)(A).

2. Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ——(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]"

Congress did not define the terms used in § 523(a)(2)(A). The United States Supreme Court, however, has held that the terms of § 523(a)(2)(A) should be construed by incorporating the general common law of torts, that is the dominate consensus of common law jurisdictions rather than the law of any particular State. *Field v. Mans,* 516 U.S. 59, 71 n. 9, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

■ For a debt to be declared excepted from discharge under § 523(a)(2)(A) a creditor has to demonstrate that: (1) the debtor made representations; (2) which he knew were false; (3) he made them with the intention and purpose of deceiving the creditor; (4) the creditor relied on such representations; (5) the creditor sustained the alleged loss and damage as the proximate result of the false representations by the debtor. *In re Ophaug,* 827 F.2d 340, 342 n. 1 (8th Cir.1987).

■ Fraud implied by law will not suffice to create an exception to discharge, only actual fraud is contemplated by § 523(a)(2)(A). *Id.* Reduced to its essentials, in order for § 523(a)(2)(A) to be effectually invoked, a creditor must prove the debtor intended to deceive the creditor, the creditor justifiably relied on the debtor's false representation, and that the false representation was material. *Field,* 516 U.S. at 68, 116 S.Ct. 437. The creditor must establish his case by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286–287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

At trial Regency and the Barnes presented testimony and written evidence concerning the disputed car sale. Two of the three elements of fraud, justifiable reliance and materiality, were not contested. The manager of Regency, Dominic Parolin, testified at trial that the Barnes presented a lien-free title to the Mitsubishi at the time that they sold the car to Regency.

Regency relied on the title's lien-free status in making its decision to purchase the car. The lack of a lien on the vehicle was a material issue in Regency's decision to purchase the car.

■ The remaining issue, therefore, is whether the Barnes intended to represent to Regency that the vehicle was lien-free when they knew that representation was, in fact, false. Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, intent may be inferred from the circumstances surrounding the transaction at issue. *In re Van Horne,* 823 F.2d 1285, 1288 (8th Cir.1987)(abrogated on other grounds). When circumstantial evidence is introduced which allows an inference of the debtor's intent to deceive, the debtor cannot overcome the inference by simply making an unsupported assertion of honest intent. *Id.* (citation and quotations omitted). The focus of the inquiry is on whether the debtor's actions appear so inconsistent with his self-serving assertion of honest intent that the evidence leads the court to disbelieve the debtor. *Id.* at 1288. (citation and quotations omitted).

■ Regency's manger, Parolin, testified that when the Barnes presented the title to Regency they did not mention that there was a lien on the vehicle. Parolin never inquired about a lien because the title did not show one.

Auffenberg's office manager, Emlie Rae, testified that Auffenberg received notice that the Barnes had filed a Chapter 13 bankruptcy proceeding in December 1997. Auffenberg was listed as a creditor in that case. Rae testified that Auffenberg never filed a proof of claim in that case. She stated that Auffenberg never sought to receive any monthly payments under the Barnes' Chapter 13 plan.

The Chapter 13 proceeding was dismissed in February 1999 over a year after it was filed. Auffenberg received notice of the dismissal and at that time discovered that they were not listed as a lienholder on the Barnes' Mitsubishi. Auffenberg contacted the Missouri Department of Revenue to correct the oversight. Auffenberg authorized the vehicle to be repossessed on February 23, 1999.

Rae testified that from the time that the Barnes filed their Chapter 13 proceeding until the date that they sold the Mitsubishi to Regency on March 3, 2000, Auffenberg never attempted to contact the Barnes concerning the disposition of the vehicle.

Regency claimed an intent to defraud existed because the Barnes should have known that a mistake had been made when the title was issued without Auffenberg listed as a lienholder. Regency asserted that the Barnes knew that they still owed Auffenberg money for the car and knew that Auffenberg would not waive a lien until the loan was paid in full. At a minimum, Regency claimed that the Barnes should have told Regency about the outstanding loan with Auffenberg.

Defendant Shirley Barnes testified that she and her husband listed Auffenberg as a creditor in their Chapter 13 proceeding. Auffenberg never filed a proof of claim. None of the Barnes' payments under the Chapter 13 plan were allocated to Auffenberg nor was any payment made outside the plan to Auffenberg.

Shirley testified that two months after she and her husband filed for bankruptcy relief, they received a certificate of title from the Department of Revenue dated February 28, 1999. The title did not list a lienholder. The Barnes consulted with their Chapter 13 attorney, T.J. Mullin, concerning Auffenberg's creditor position. Based on the facts that Auffenberg did not file a proof of claim and the title was issued without a lienholder, the Barnes concluded that Auffenberg had abandoned any interest in the vehicle.

Shirley testified that before she and her husband sold the car to Regency in March 1999, she called the Department of Revenue four times just to be sure that they had clear title to the car and that no lienholder was listed. She testified that she and her husband felt assured that the title to the car was clear when they sold it to Regency on March 3, 1999.

After the Barnes sold the vehicle, the Barnes received a letter dated March 8, 1999, from the Department of Revenue stating that a mistake had been made and that Auffenberg should have been listed as a lienholder on the vehicle. The Barnes had already sold the car when they received this letter.

James Barnes testified that he called the Department of Revenue at least two times before he and his wife sold the car to ensure that there was not a lien on the vehicle. He stated that the reason he and his wife kept calling the Department of Revenue was that they could not believe that they actually had clear title to the vehicle. But upon consultation with their Chapter 13 attorney and repeated calls to the Department of Revenue the Barnes accepted that fact that they had clear title. He concluded that Auffenberg had abandoned its interest in the vehicle.

After their Chapter 13 proceeding was dismissed, Auffenberg never directly contacted the Barnes to demand payments on the car or to repossess the car. James testified, however, that between the time that Chapter 13 case was dismissed and before he sold the car to Regency a man came to the house "looking for the car." The man said that he represented an agency (not Auffenberg). James told him that he had clear title to the car and the man

left. The Barnes had been shopping the car around to sell it prior to the man's visit and sold it a few days after his visit. James testified that he understood that he and his wife had clear title to the vehicle when they sold the car.

Regency presented circumstantial evidence in an attempt to prove that the Barnes intended to hide the existence of a lien on the vehicle. The Barnes responded with more that a mere assertion of good intent. They presented evidence which led them to believe that the car was lien-free.

The Court finds Shirley and James Barnes' testimony to be creditable that they had a good faith belief that they had clear title to the car. Auffenberg's failure to file a proof of claim or to seek a relief from stay in the Barnes' Chapter 13 proceeding led the Barnes to conclude that Auffenberg had abandoned its claim to the Mitsubishi. The Barnes' conclusion was reinforced when they received a clear title to the vehicle from the Department of Revenue two months after they filed their Chapter 13 proceeding. Their Chapter 13 attorney confirmed to them that they had clear title to the car even though they admitted that they owned Auffenberg a debt as evidenced on the creditor's matrix filed in the case.

The Barnes made repeated calls to the Missouri Department of Revenue and confirmed that there was no lien on the car. These calls acted to further reinforce the Barnes belief that Auffenberg had abandoned any claim in the vehicle and that they really had clear title to the car. Based on all of the evidence, the Court finds that the Barnes' actions are not inconsistent with their assertion that they did not intend to defraud Regency. For a debt to be excepted from discharge under § 523(a)(2)(A) the creditor must establish that the debtor acted with intent to com-

mit fraud. Such an intent was not established in this case.

Regency was listed as a creditor in the Barnes' Chapter 7 proceeding filed on June 30, 2000. The Barnes' debt in that proceeding was discharged on October 3, 2000. Consequently, any debt owed to Regency by the Barnes has been discharged.

An Order consistent with this Memorandum Opinion will be entered this date.