Sarah Elizabeth DAWSON, Debtor.

Norma Durns, Darlene
Durns, Plaintiffs,

v.

Sarah Elizabeth Dawson, Defendant.

Bankruptcy No. 00–01534–W.
Adversary No. 00–9121–W.

United States Bankruptcy Court,
N.D. Iowa.

Nov. 14, 2001.

**730**

Don Gottschalk, Cedar Falls, IA, for Plaintiffs.

John Pieters, Jr., Waterloo, IA, for Debtor.

### RULING

PAUL J. KILBURG, Chief Judge.

This matter came before the undersigned for trial on October 16, 2001. Plaintiffs Norman and Darlene Durns appeared, represented by Attorney Don Gottschalk. Debtor/Defendant Sarah Dawson appeared, represented by Attorney John Pieters, Jr. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### STATEMENT OF THE CASE

Plaintiffs assert their Iowa District Court judgment based on a construction contract is excepted from discharge for fraud. Debtor argues she had no intent to defraud Plaintiffs or cause them harm.

### FINDINGS OF FACT

Plaintiffs attached the Iowa District Court ruling to their complaint. Debtor Sarah Dawson and Randy Dawson, both listed as doing business as Randall's Home Improvement, were the defendants in that action. The court found that Debtor actively participated in the business. Further, the court stated Debtor, "by her words and actions, represented that she was associated with Randall's Home Improvement." *Durns v. Dawson*, Black Hawk County No. LACV082821, slip op. at 2 (Iowa Dist.Ct.May31, 2000). The court entered judgment against Debtor in the amount of $7,500, plus interest and costs.

Plaintiff Darlene Durns testified to the sequence of events which led up to the judgment debt. In the spring of 1999, Plaintiffs responded to a newspaper ad for Randall's Home Improvement. Both Debtor and Randy Dawson met with Plaintiffs regarding building a room addition and presented an estimate for the work. Randy Dawson did the measuring and Debtor wrote the proposal. Exhibit 1 is a copy of the estimate dated 5–25–99. Debtor handwrote this document and wrote in Randy Dawson's name at the bottom. Randy Dawson did not himself sign the proposal. The total of the estimate is $13,000. Debtor similarly drafted a proposal dated 5–30–99 in the amount of

$1,990 to replace siding on Plaintiffs' garage.

Plaintiffs wrote a check to Randall's Home Improvement for $7,500, or one-half of the total of the two estimates, as down payment for the purchase of supplies. Mrs. Durns gave this check to Debtor and Debtor subsequently endorsed it and deposited it in her own checking account. Work on these construction projects was to start on June 10. Near the end of June, Plaintiff Norman Durns approached Randy Dawson at another job site. Mr. Dawson stated he would send a worker over to measure footings. No work was ever started on the project and none of the down payment was returned to Plaintiffs.

Debtor testified that, in June or July 1999, Randy Dawson was sentenced to prison. Randall's Home Improvement business no longer exists as it closed when Mr. Dawson went to prison. Debtor testified that Randy Dawson was her boyfriend at the time the work for Plaintiffs was contracted. The record indicates that Debtor Sarah Dawson and Randy Dawson were not married, but they may have been related by blood. Mrs. Durns testified that she thought Debtor and Randy Dawson were married when they came to estimate the work. She did not learn until July 1999 that they were not married. Debtor testified she and Randy Dawson are no longer together. She works as a nurse and is not involved in the home improvement business.

Debtor testified that both Randy Dawson and she thought he would be put on work release rather than sentenced to prison. Debtor stated that Mr. Dawson had always finished jobs he contracted to do and she thought the work for Plaintiffs would be completed. Debtor testified none of the $7500 down payment went to her use. She stated that Mr. Dawson used the $7500 within several days of the depos-

it, either through ATM or check withdrawals from Debtor's checking account. As Mr. Dawson was not listed on Debtor's account, Debtor would have had to authorize him to make the withdrawals. Debtor testified she learned that Mr. Dawson never purchased materials for Plaintiffs' job immediately before he went to prison.

### CONCLUSIONS OF LAW

Plaintiffs bear the burden to prove the elements of their claim under 11 U.S.C. § 523(a) by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 285, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge must be "narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code. These considerations, however, 'are applicable only to honest debtors.'" *In re Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987) (citations omitted).

### SECTION 523(a)(2)(A)

Plaintiffs rely on § 523(a)(2)(A) as grounds for excepting their claim from discharge. This section states:

(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A) (1993). In the Eighth Circuit, a creditor proceeding under § 523(a)(2)(A) must prove the following elements:

(1) the debtor made false representations;

(2) at the time made, the debtor knew them to be false;

(3) the representations were made with the intention and purpose of deceiving the creditor;

(4) the creditor justifiably relied on the representations; and,

(5) the creditor sustained the alleged injury as a proximate result of the representations having been made.

*Van Horne,* 823 F.2d at 1287, as modified by *Field v. Mans,* 516 U.S. 59, 74–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (holding that "§ 523(a)(2)(A) requires justifiable, but not reasonable, reliance").

## COLLATERAL ESTOPPEL

■ Collateral estoppel applies in bankruptcy dischargeability proceedings brought under § 523(a). *Grogan v. Garner,* 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). When the parties have previously litigated an issue in a state court, the Bankruptcy Court will apply the law of collateral estoppel of the state. *In re Madsen,* 195 F.3d 988, 989 (8th Cir.1999). Under Iowa law, collateral estoppel applies if (1) there is an identity of issues in the current and prior actions, (2) the issue was raised and actually litigated in the prior action, (3) the issue was material and relevant to the disposition of the prior action, and (4) the determination was necessary and essential to the prior judgment. *Dolan v. State Farm Fire & Cas. Co.,* 573 N.W.2d 254, 256 (Iowa 1998).

## ANALYSIS

■ Some of Debtor's testimony appears to focus on an attempt to distance herself from Randy Dawson's business. The Court notes the Iowa District Court determined that Debtor was actively involved with the business and that Debtor represented that she was associated with Randall's Home Improvement. To the ex-

tent Debtor is attempting to be absolved from liability in this matter, the doctrine of collateral estoppel is applicable. Debtor's liability for this debt is conclusively determined by the Iowa District Court's ruling.

■ The first element of § 523(a)(2)(A) requires Plaintiffs to prove Debtor made false representations. The relevant misrepresentation in the circumstances would be that Debtor knowingly and falsely, intending to deceive Plaintiffs, represented that the contract work would be done. Debtor testified that to her knowledge Randy Dawson had always completed his contract work. She also stated she did not expect him to be imprisoned.

The Court finds Debtor misrepresented her relationship with Mr. Dawson to Plaintiffs. She allowed them to speculate that she and Mr. Dawson were married and running the business together. From this, Plaintiffs justifiably believed both Debtor and Randy Dawson would be responsible for the work for which they contracted.

The Court also concludes that Debtor misrepresented that the contract would be completed. The contract was formed within a month of Mr. Dawson being sentenced to prison. Debtor knew Mr. Dawson was subject to being imprisoned and would not be able to complete the job if sentenced to prison. The Court finds Debtor's assertion that she did not expect Mr. Dawson to be sentenced to prison is not reasonable. Plaintiffs' deposit was withdrawn from Debtor's account within days of its deposit without any building products being purchased. The record proves Debtor was or should have been aware of a substantial risk that Mr. Dawson would not complete the contract. Her conduct and her contact with Plaintiffs falsely represented the circumstances surrounding the contract.

Viewed as a whole, the record supports a finding that, in light of Mr. Dawson's

pending sentencing, Debtor falsely led Plaintiffs to believe that she stood behind the contract and that the contract would be completed. Debtor intended that Plaintiffs rely on these false impressions to enter into the contract, which Plaintiffs justifiably did. Plaintiffs were injured, as evidenced by their Iowa District Court judgment, as a proximate result of Debtor's misrepresentations.

**WHEREFORE,** Plaintiff's Complaint to determine dischargeability of debt is GRANTED.

**FURTHER,** Plaintiffs have proved their Iowa District Court judgment against Debtor is excepted from discharge under § 523(a)(2)(A).

**FURTHER,** judgment shall enter accordingly.